# City of Norfolk

## v.

# Betty Kohler

Record No. 841236

November 25, 1987

Present: All the Justices

*Daniel R. Hagemeister, Deputy City Attorney (Philip R. Trapani, City Attorney*, on briefs), for appellant.
*Neil C. Bonney (Robert M. White; White and Selkin*, on brief), for appellee.

POFF, J., delivered the opinion of the Court.

This is an employer's appeal from a judgment awarding an employee damages for wrongful termination of employment.

In a motion for declaratory judgment filed against the City of Norfolk, its city manager, and the director and members of the Board of Directors of the Norfolk Public Library System, Betty Kohler demanded damages and reinstatement to her position as deputy director of the Norfolk Public Library. The trial court heard the evidence *ore tenus*, and because the plaintiff prevailed below, we will review the evidence in the light most favorable to her.

Kohler, a librarian with a master's degree in library science and 23 years experience in the practice of her profession, was hired as deputy director effective February 5, 1973. She accepted the offer of employment because the director, Arthur M. Kirkby, informed her that she "would become a member of the classified civil ser-

vice", that she "would have the protection of due process", that she "could not be fired without just cause", and that she "should be able to work . . . until [she] was ready to retire." At that time, section 112(7) of the charter granted the City by the General Assembly, Acts 1918, c. 34, provided that, following a probationary period of six months, "no officer or employee in the classified service shall be . . . discharged except for cause and upon written charges, and after an opportunity to be heard in his own defense." Kohler completed the probationary period and assumed the status of a classified employee in 1973.

Director Kirkby retired in September 1976, and Kohler became acting director of the library. She and Dean Gross, another professional librarian, filed applications to fill the vacancy. Gross won the appointment in January 1977, and Kohler resumed her former position as deputy. As the new director, Gross inaugurated a number of changes in library functions and proposed others which Kohler and other members of the library staff felt were not in the best interests of the library and its patrons. In meetings of the staff, Kohler expressed her concerns and criticisms in strong terms, and her relationship with Gross became strained.

In a report submitted to the Board of Directors in June 1977, Gross blamed "[l]ow staff morale" on the development of "[t]wo very pronounced factions . . . caused by Mrs. Kohler's candidacy for the position of library director." Gross said that "we do not need an assistant director" and added that he "would like to discuss this with her and ask her to seek a position elsewhere." On February 22, 1978, several members of the library staff signed and dispatched a letter to the State Librarian in Richmond complaining that Gross had "volunteered to cut staff" to a level below that prevailing in similar libraries. Kohler, who had not signed the letter, was notified by the city manager in a letter dated March 15, 1978 that she was terminated effective April 15, 1978. Although Kohler repeatedly demanded to be given the reasons for her discharge and afforded an opportunity to be heard in her own defense, she received neither, either before or after her termination.

Kohler testified that she filed "75 to a hundred applications and resumes" with other libraries but was unable to find employment until September 1979 when she began work at a library in Fredericksburg. She worked there for two years at a salary substantially less than her former salary. In 1981, she transferred to a library

in Charlottesville where she worked until she retired in 1983 at the age of 65.

At trial, the City took the position that the reason Kohler was afforded no notice or hearing was that she had lost her status as a classified employee. The General Assembly, at the City's express request, had amended the City's charter to provide that "assistant heads of administrative departments except for the departments of fire and police . . . shall not be included in . . . classified service". Acts 1977, c. 42. The City argued that, inasmuch as the General Assembly had changed Kohler's employment status in 1977, the rights guaranteed classified employees by the City charter when she was hired in 1973 did not apply to her termination in 1978.

The trial court ruled from the bench that Kohler's "right to continue gainful employment as a Civil Service employee, unless terminated for cause, was a right that accrued at the time she was hired and could not be taken away involuntarily by the 1977 Charter amendment." Accordingly, the trial court held that, because "[n]o hearing was conducted as required [and] no reasons for discharge were given . . . damages for lost earned wages are factually appropriate here." Computing damages for wages lost following Kohler's discharge, the trial court entered judgment against the City for $41,553 and costs,[1] and we granted the City an appeal. The judgment did not run against any of the other defendants.

Much of the argument on appeal focused upon the question whether the 1918 City charter had conferred upon Kohler a property interest in continued employment protected by the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 11, of the Virginia Constitution. The trial court did not rest its decision on due process grounds, and we find it unnecessary to reach the constitutional question.[2]

The City cites a number of decisions of courts in other jurisdictions which have held that employment rights conferred by

---

[1] Kohler's counsel had abandoned the demand for reinstatement on the first day of trial.

[2] While we need not decide the issue here, we note the logic of Kohler's due process argument. In *Cleveland Board of Education* v. *Loudermill*, 470 U.S. 532, 538-41 (1985), the United States Supreme Court decided that two "classified [state] civil service employees . . . who could not be dismissed [except for cause] possessed property rights in continued employment" and, therefore, were entitled to the protection of the Fifth and Fourteenth Amendments.

the legislature on government employees can be modified or repealed lawfully by subsequent legislation. We recognize this as a rule of general application. But our decision is controlled by Code § 1-16 which provides in pertinent part as follows:

> No new law shall be construed to repeal a former law, as to . . . any right accrued, or claim arising under the former law, or in any way whatever to affect . . . any right accrued, or claim arising before the new law takes effect . . . .

" '[S]ubstantive' rights, as well as 'vested' rights, are included within those interests protected from retroactive application of statutes." *Shiflet* v. *Eller*, 228 Va. 115, 120, 319 S.E.2d 750, 753 (1984). The charter granted the City by the General Assembly in Acts 1918, c. 34, conferred upon selected City employees a package of job guarantees; no employee in the classified service could be discharged except "for cause and upon written charges, and after an opportunity to be heard". Construing these guarantees together, we hold that they created a substantive right, and in the language of Code § 1-16, a "right accrued . . . under the former law" which could not be repealed or "in any way whatever" affected by the enactment of the new law, Acts 1977, c. 42. *See Norfolk Southern Ry. Co.* v. *Harris*, 190 Va. 966, 976, 59 S.E.2d 110, 114 (1950) ("The . . . agreement that [the employer] would not discharge plaintiff without just cause was a thing of value to him, a safeguard against the loss and embarrassment to be expected from an arbitrary discharge.").

In a second assignment of error, the City contends that "even if it was a procedural error to deny the plaintiff written charges and a hearing, that error was not the cause of any damage she incurred because the City would clearly have been able to establish a justification for dismissal had such a hearing been held." Citing several federal decisions, the City argues that "procedural rights can be properly vindicated by the awarding of nominal damages in appropriate cases" and that this is such a case.

We disagree. Such a rule is definitionally inapposite here. The error the City made was not merely a denial of procedural rights but a deprivation of a package of job guarantees which, as we have said, was substantive in character and protected by Code § 1-16. Clearly, the City's error was the cause of Kohler's loss of

earnings for an extended period of time, and the quantum of that loss is undisputed. Consequently, we reject the City's argument.

In its final assignment of error, the City contends that "[t]he trial court erred in granting relief to the plaintiff because . . . she came into equity with unclean hands." Particularizing on brief, the City says that Kohler's "opposition to Mr. Gross and her efforts to depose him constituted a vindictive strategy to discredit the man who had obtained the appointment that she so zealously sought for herself."

Although, as the City points out, the trial court agreed that the evidence showed that Kohler "actively worked in opposition to goals and policies proposed and then adopted by the librarian over an extended period of months prior to March the 15th, 1978", the trial court expressly found that "Dean Gross and Betty Kohler . . . are dedicated professionals who seek the best that can be obtained for the institution by which they are employed, for the benefit of the community." In effect, the trial judge, who heard all the evidence *ore tenus*, found that Kohler's hands were clean, and we cannot say that his finding is not supported by the record before us.

On brief, Kohler assigned several cross-errors positing certain First Amendment issues and several questions concerning damages, court costs, and attorney's fees. In response to a question from the bench during oral argument, Kohler's counsel waived the right to a remand for trial on those issues in the event we should reject the errors assigned by the City. Having found no merit in the City's complaints and no cause to remand the case, we will affirm the judgment of the trial court.

*Affirmed.*

COMPTON, J., dissenting.

The majority acknowledges the general rule that "employment rights conferred by the legislature on government employees can be modified or repealed lawfully by subsequent legislation." Nevertheless, the majority proceeds to find that a "substantive" right was conferred upon Kohler under the facts of this case and then determines that the decision is "controlled" by Code § 1-16. I disagree.

In my view, no "substantive" right in the terms and conditions of employment accrued to this government worker. She was not hired under any written agreement, but under the provisions of existing law. When she became a City employee under applicable legislation, she was subject in all respects to that legislation and likewise was subject to any alterations in her employment thereafter made by the legislature. Kohler had no "substantive" right, or due process right (as alluded to in footnote 2 of the majority opinion), to insist that a procedure for discharge be continued in force as to her for the duration of her employment.

Accordingly, I would reverse the judgment of the trial court and enter final judgment here in favor of the city.

CARRICO, C.J., and THOMAS, J., join in dissent.