**David A. GARRAGHTY,**
**Plaintiff–Appellee,**

v.

**COMMONWEALTH of Virginia, Department of Corrections; Edward W. Murray, individually and in his official capacity as Director of the Department of Corrections, Commonwealth of Virginia; Edward C. Morris, individually and in his official capacity as Deputy Director of the Department of Corrections, Commonwealth of Virginia; Richard A. Young, individually and in his official capacity as Regional Administrator, Adult Institutions, Western Region, Department of Corrections, Commonwealth of Virginia; Donald A. Zimmerman, individually and in his official ca-**

---

pacity as Inspector General, Office of the Inspector General, Department of Corrections, Commonwealth of Virginia; Kenneth Moore, individually and in his official capacity as Investigations Supervisor, Office of the Inspector General, Department of Corrections, Commonwealth of Virginia; Paul Broughton, individually and in his official capacity as Head of Employee Relations, Department of Corrections, Commonwealth of Virginia, Defendants–Appellants.

No. 94–1870.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 31, 1995.

Decided May 9, 1995.

**ARGUED:** Bradley Brent Cavedo, Shuford, Rubin & Gibney, P.C., Richmond, VA, for Appellants. James Broome Thorsen, Thorsen, Page & Marchant, Richmond, VA, for Appellee. **ON BRIEF:** Robert A. Dybing, Shuford, Rubin & Gibney, P.C., Richmond, VA, for Appellants.

Before ERVIN, Chief Judge, and MURNAGHAN and MOTZ, Circuit Judges.

Affirmed in part, reversed in part, and remanded by published opinion. Judge MOTZ wrote the opinion, in which Chief Judge ERVIN and Judge MURNAGHAN joined.

## OPINION

MOTZ, Circuit Judge:

The district court denied various state officials qualified immunity for their role in discharging a warden, without affording him the benefits of the state grievance procedure or any hearing that included the right to confront and examine witnesses. We affirm in part, reverse in part, and remand for further proceedings.

### I.

David A. Garraghty began employment with the Commonwealth of Virginia, Department of Corrections, in 1972. Eight years later, he became warden of Deep Meadow Correctional Center. He served there and

then as warden at another Department of Corrections facility before he became warden at the Nottoway County Correctional Center in 1984. He held that position until he was discharged on September 25, 1992.

When Garraghty was hired, his position was among those entitled to the protection of Virginia's grievance procedure. *See* Va.Code § 2.1–110 *et seq.* In 1985, however, the legislature enacted an amendment to the Virginia Personnel Act that specifically excluded wardens from its protection. *See* Va.Code § 2.1.–116(16) (1985) (amended 1994). There was some evidence in the record that this amendment was known as the "Garraghty Bill" and was passed in reaction to Garraghty's criticism of various correctional policies.[1] In any event, throughout this litigation Garraghty has asserted he had property interests, derived from the state grievance procedure, in the procedures themselves and in continued public employment and that he was deprived of these property interests without due process. Before addressing these issues, we set forth the events leading up to Garraghty's termination and the process that was provided to him.

On April 27, 1992, Gloria Williams, the personnel officer at Nottoway prison, met "unofficially" with Paul Broughton, the "head of employee relations," to discuss "an apparent pattern of harassment or retaliation" by Garraghty against Williams. The two discussed Williams' possible "options," i.e., complaining to Garraghty directly, to his supervisor, to the EEOC, or to other agencies. A few days after that conversation, on May 1, Williams sent a memorandum to Garraghty, complaining of "what [she] perceive[d] to be Sexual Harassment once again."[2] Specifically, Williams asserted that since March 17, 1992 when Garraghty had placed his hand on her knee and received a negative response to his question to her " 'Do you want to mess around?' " Garraghty had been sending her

"derogatory notes" concerning her "work and performance." On receipt of Williams' memorandum, Garraghty met with her to discuss her allegations, and then Garraghty himself reported them to Richard A. Young, a Regional Administrator for the Department of Corrections. Young, in turn, reported them to Edward C. Morris, the Deputy Director of the Department, who apparently reported the charges to Edward C. Murray, the Director of the Department of Corrections. Murray "ordered the Inspector General to fully investigate" the charges. Pursuant to his instructions, the Inspector General, Donald A. Zimmerman, interviewed Williams briefly to determine the nature of her allegations and then assigned an investigator, Kenneth Moore, to conduct an investigation of them.

On June 5, 1992, Moore filed a written report detailing his findings. That report indicates that Moore's investigation involved interviews with various employees of the Department of Corrections, including both Williams and Garraghty. Moore attempted to verify the information provided in these interviews and noted when documentary information was lacking or conflicted with an account he received in an interview. Moore concluded that some of Williams' claims were not true; for example, Garraghty's evaluations of Williams did not drop 22 points after her prior relationship with Garraghty had ended. However, Moore noted that Williams had contemporaneously told others that she was being harassed by Garraghty and a polygraph examination of Williams supported the essence of her charges that Garraghty had made sexual advances. Garraghty denied placing his hand "on any part of Williams' body in a sexual contact" or making "any serious sexual gesture or comments towards Mrs. Williams." He admitted, however, that he "could have … made a statement to her,"

---

**1.** During the summer of 1984, Garraghty was an outspoken critic of the Department of Corrections and sought to organize correctional workers. In 1985, Garraghty was suspended for five days without pay and then unsuccessfully sued his supervisors (one of whom, Edward Murray, is also a defendant here) asserting that this suspension was designed to punish him for his critical speech and union activities in violation of his due process and First Amendment rights. *See Garraghty v. Jordan,* 830 F.2d 1295 (4th Cir.1987).

**2.** Garraghty and Williams were involved in an intimate relationship that ended in 1984. Williams alleged that she had been subjected to similar sexual harassment subsequent to her prior relationship with Garraghty.

explaining, "[w]e make sexual comments within our group always, things that go on among people in the work place." Garraghty further asserted that Williams showed no "objection, anger, or disapproval." In addition, Moore's investigation uncovered complaints that Garraghty had engaged in sexual harassment of other persons in 1983 and 1985. The circumstances of the alleged 1983 harassment were similar to Williams' claim,[3] and the Administrator for Personnel and Training had determined that Garraghty's conduct, in connection with the 1985 allegation, "would be construed as a form of sexual harassment."

Moore's report was first reviewed by Inspector General Zimmerman, and then by Deputy Director Morris and Regional Administrator Young. On July 15, 1992, Morris and Young met with Garraghty and his attorney "to review the findings of the investigation." At the meeting, "Garraghty and his attorney were informed of the allegations, and invited to present evidence to support their version of the events in question;" however, Morris did not permit Garraghty to confront and examine any witnesses, not even Williams. On August 25, 1992, Morris again met with Garraghty and his counsel and advised them that he had decided to terminate Garraghty. This was confirmed by a letter of the same date from Morris to Garraghty that indicated that Garraghty's termination was effective September 25, 1992 and that he had the right to have "this decision reviewed by the Director of the Department of Corrections."

On September 2, 1992, Garraghty, by counsel, requested review of Morris' decision by Director Murray. In a letter dated September 28, 1992, Garraghty, by counsel, complained to Murray that he had not "had the opportunity to cross-examine Mrs. Williams or any witnesses on her behalf." On that same day, Murray met with Garraghty and his attorney, reviewed the allegations against Garraghty, and gave Garraghty an opportunity "to present his side of the events in

question," but again Garraghty was given no opportunity to examine any witnesses. After that meeting, Murray examined the "investigative reports of the Inspector General, the conclusions of Mr. Morris ..., [the 16 page] written response [to the report and Morris' letter] from [Garraghty's] attorney, and the information provided to [Morris] during [his] meeting [with Garraghty]." On October 30, 1992, Murray upheld the decision to terminate Garraghty and notified him of his right to appeal the termination to the Secretary of Public Safety, O. Randolph Rollins.[4]

Two weeks later, on November 13, 1992, Garraghty did appeal to Rollins. Rollins requested that Garraghty "state with specificity the grounds on which" his appeal was based and provide "a written presentation in support of the issues that [he] identif[ied] as [the] basis for appealing this matter." Garraghty, by counsel, provided Rollins with the requested information. Garraghty does not seem to have been afforded a hearing of any kind by Rollins. In any event, again no opportunity was afforded Garraghty to confront and examine witnesses. Rather, in a letter to Garraghty dated April 2, 1993, Rollins "sustained" Murray's basic findings— that Garraghty had made "an unwanted sexual advance that was rejected" and that subsequent conduct by Garraghty "constituted retaliation." Rollins, however, believed that the harassment "continued only for a short time" and "did not cause or result in any measurable or material damage or injury to Ms. Williams." Moreover, he felt that the Department of Corrections "incorrectly took into account previous unproven allegations of sexual harassment." Accordingly, Rollins modified the remedial measures taken by the Department. He suspended Garraghty, retroactively, "from September 25, 1992 to November 6, 1992," demoted him from pay grade 17 to pay grade 16, "reinstated" him in "such position within the Department as the Director in his discretion determines," and awarded him "back pay at pay grade 16 from

---

**3.** Both Williams and the woman who made the 1983 allegation had previously had "a personal relationship" with Garraghty.

**4.** On November 11, 1992, Garraghty filed a state defamation action against Williams; on August 26, 1993, a jury ultimately awarded him substantial money damages. The defamation action is now on appeal to the Supreme Court of Virginia.

November 6, 1992 to April 16, 1993." Garraghty is still employed by the Department at pay grade 16.

On December 30, 1993, Garraghty filed this action, asserting that the Department, Murray, Morris, Young, Zimmerman, Broughton, and Moore, in their official and individual capacities, in violation of the Equal Protection and Due Process clauses of the Fourteenth Amendment, deprived him of his "liberty and property interest in continued public employment," and denied him "vested" rights "secured to him under the state grievance procedures." He also alleged that the defendants actually dismissed him because of "his critical speech and union activity" and so violated his First Amendment speech and assembly rights, and that his dismissal constituted a breach of state law contract rights. Garraghty requested that the court declare his termination illegal, enjoin the defendants from further illegal acts, require him to be paid at grade 17, or grant him a "Grievance Panel hearing," and award him substantial compensatory and punitive damages. The district court dismissed all claims against the Department and the individual defendants, in their official capacities, to the extent such claims sought "retrospective relief and damages."

■ The individual defendants then moved for summary judgment on all claims. They argued that they were entitled to qualified immunity as to Garraghty's due process property interest claims and that the other claims were without merit on other grounds. The district court denied summary judgment as to all claims except those based on the Equal Protection Clause. Pursuant to *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985), the defendants filed an immediate appeal, asserting that qualified immunity entitled them to summary judgment on Garraghty's claims

that he was denied property rights without due process.[5]

## II.

■ Garraghty claims that the defendants, without due process, deprived him of two protected property rights, one in the benefits of the state grievance procedure, the other in continued state employment. Determination of whether one has a constitutionally protected property right is a question of state law. *See, e.g., Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). Garraghty asserts that the basis of both of his asserted property rights is the Virginia Personnel Act.

The Act provides that "[a]ll permanent state governmental personnel," except certain excluded employees, "are eligible to file grievances as provided in this chapter." *See* Va.Code § 2.1–114.5:1.C. Moreover, the Act establishes an elaborate grievance procedure, which "include[s] not more than four steps for airing complaints at successively higher levels of management and a final step providing for a panel hearing." § 2.1–114.5:1.D. "With the exception of the final management step" neither side is permitted to be represented by counsel during the management step meetings. § 2.1–114.5:1.D.3. "At the final management step, the grievant, at his option, may have present a representative of his choice. If the grievant is represented by legal counsel, management likewise has the option of being represented by counsel." *Id.* The "final step" of the grievance process entitles employees to "a hearing before an impartial panel" of three persons. § 2.1–114.5:1.D.4.b. At the panel hearing, an employee has the right to "be represented by legal counsel" who may "examine, crossexamine, question and present evidence...." § 2.1–114.5:1.D.4.d. It is undisputed that

---

**5.** The defendants also seek to have us exercise "pendent appellate jurisdiction" and review the district court's refusal to grant them summary judgment on their liberty interest, First Amendment, and state contract claims. They have never asserted qualified immunity from liability on those claims. Moreover, they properly recognize that any exercise of pendent appellate jurisdiction is entirely within our discretion. *See DiMeg-*

*lio v. Haines*, 45 F.3d 790, 807–08 (4th Cir.1995); *O'Bar v. Pinion*, 953 F.2d 74, 80 (4th Cir.1991). In light of the Supreme Court's recent decision in *Swint v. Chambers County Commission*, — U.S. ——, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995), it is unclear whether an appellate court has any "pendent appellate jurisdiction" over claims like these. In any event, in view of *Swint*, we decline to exercise such jurisdiction here.

when Garraghty was initially hired by the Commonwealth in 1972 and when he was first appointed a warden in 1980, his positions were among those covered by the Personnel Act. However, in 1985, the Personnel Act was amended to provide that "all superintendents and wardens of the Department of Corrections shall be exempt from this chapter." § 2.1–116(16) (1985).

Garraghty asserts that the 1985 amendment to the Act was not retroactive, and so he has a property interest under the Act in the "post-termination procedure [of] the state's grievance procedure" and a clearly established right to that "procedure." Alternatively, he argues that "even if this Court finds he is not entitled to participation in the state's grievance procedure," the Act provides him with a property interest in continued public employment, of which he was deprived, without due process, when he was dismissed after " 'meetings' with Morris, Young, and Murray and his 'review' with Rollins," because neither the meetings nor the review included the right to confront and examine witnesses. All defendants, except the decision makers, Morris, and Murray, assert that no action of theirs deprived Garraghty of any due process. All defendants, including the decision makers, maintain that their conduct deprived Garraghty of no constitutionally protected right and that even if it did, they are entitled to qualified immunity because Garraghty's rights were not so clearly established that they could have reasonably known that their conduct violated the Constitution. We consider each of these arguments in turn.

A.

■ Zimmerman, Moore, Broughton, and Young assert that "[e]ven assuming Garraghty was deprived of a property interest in employment without due process, he has no claim for that deprivation against" them. They contend this is so because "[i]t is the denial of due process itself, meaning the absence of a meaningful hearing, that states the constitutional infringement in a property interest claim." The district court rejected this argument, holding that a reasonable jury

could conclude that "these Defendants, by their personal acts, caused the termination."

■ In some contexts this conclusion is warranted, i.e., causing a termination is sufficient to give rise to § 1983 liability. See Wulf v. City of Wichita, 883 F.2d 842, 864 (10th Cir.1989) (causal connection between recommendation and termination may give rise to liability for first amendment claims). In the present case, however, the alleged constitutional violation was not termination, but termination without sufficient process. Therefore, the only persons who can be liable for the denial of due process are those in a position to provide constitutionally adequate process. See Melton v. City of Oklahoma City, 879 F.2d 706, 731 n. 40 (10th Cir.1989) (even when a defendant's "actions arguably triggered the need for the ... hearing ... [because] he was not in a position to ensure the provision of a ... hearing; nor ... involved in the decision to discharge without due process ... [he] was not a proper defendant"), modified on other grounds, 928 F.2d 920 (en banc), cert. denied, 502 U.S. 96, 112 S.Ct. 296, 116 L.Ed.2d 241 (1991); Bettio v. Village of Northfield, 775 F.Supp. 1545, 1563 n. 12 (N.D. Ohio 1991) (dismissing defendant who was alleged to have "played a role in bringing of the charges and knew the charges were false ... [because] the procedural due process issue only addresses the adequacy of the hearing itself"); see also Wright v. Collins, 766 F.2d 841, 850 (4th Cir.1985) ("[i]n order for an individual to be liable under § 1983, it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights' ") (quoting Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir.1977)).

Although they participated in the investigation of Williams' allegation of sexual harassment by Garraghty, there is no evidence that any acts by Moore, Zimmerman, Broughton, or Young caused Garraghty to be denied due process. See Williams v. Smith, 781 F.2d 319, 324 (2d Cir.1986) (even the "filing of a false report does not, of itself, implicate the [employee] who filed it in constitutional violations which occur at a subsequent disciplinary hearing"). Moore, Zimmerman and Broughton were not even pres-

ent at any of the termination meetings that were conducted by the Department of Corrections. Although Young was present at the July 15, 1992 meeting and concurred in Morris' decision to terminate Garraghty, the record clearly reflects that both the meeting and the decision were, in fact, Morris'. Accordingly, the district court should have granted summary judgment to Zimmerman, Moore, Broughton, and Young on Garraghty's property interest claims; none of them singly or in combination caused or contributed to a denial of any of Garraghty's property rights without due process of law.

We now turn to the question of whether the remaining defendants—the decision makers, Morris and Murray—deprived Garraghty of any property right without due process of law.

### B.

■ The most fundamental property right that Garraghty claims was unconstitutionally denied him was the continued right to public employment. In *Detweiler v. Commonwealth of Va. Dept. of Rehab. Services,* 705 F.2d 557, 559–60 (4th Cir.1983), we held that the Virginia Personnel Act and the regulations promulgated pursuant to it "establish[ed] that a nonprobationary employee has a property interest in continued employment that is created by the state." It is thus clear that the Act creates a property right in continued public employment, for those covered by its provisions. *See also Jenkins v. Weatherholtz,* 909 F.2d 105, 108 (4th Cir. 1990); *Buschi v. Kirven,* 775 F.2d 1240, 1255 n. 7 (4th Cir.1985). Defendants do not claim to the contrary. What they do claim is that Garraghty was not covered by the Act at the time he was discharged. They concede that Garraghty was covered when he was hired in 1972, and when he first became a warden in 1980, but they maintain that the 1985 amendment excluding wardens from coverage of the Act controlled at the time Garraghty was terminated in 1992. Accordingly, they assert that at the time of Garraghty's termination he "was statutorily excluded from the state grievance process, and therefore not possessed of a property interest in his employment."

■ That argument simply does not square with Virginia law. Section 1–16 of the Virginia Code provides:

> No new law shall be construed to repeal a former law, or any right accrued, or claim arising from the former law, or in any way whatever to effect any such ... right accrued, or claim arising before the new law takes effect.

This statute or a predecessor has been the law of Virginia for more than 100 years and has long been held to apply to civil as well as criminal cases. *See White's Admix v. Freeman,* 79 Va. 597 (1884) (citing *Mosby v. St. Louis Mut. Ins. Co.,* 72 Va. (31 Gratt) 629 (1879)). Pursuant to it, both "substantive" and "vested" rights are "protected from retroactive application of statutes." *Shiflet v. Eller,* 228 Va. 115, 319 S.E.2d 750, 753 (1984).

■ It would seem axiomatic that the right to continued public employment is a substantive right. In *City of Norfolk v. Kohler,* 234 Va. 341, 362 S.E.2d 894 (1987), the Supreme Court of Virginia so held. There, Betty Kohler, a librarian in the Norfolk Public Library system, was terminated without any explanation. At the time Kohler was hired, she was a classified employee and the city charter provided that, " 'no officer or employee in the classified service shall be ... discharged except for cause and upon written charges, and after an opportunity to be heard in his own defense.' " *Id.* 362 S.E.2d at 895. After the city charter was amended so that Kohler was not "included in ... classified service," she was terminated. *Id.* "Although Kohler repeatedly demanded to be given the reasons for her discharge and afforded an opportunity to be heard in her own defense, she received neither, either before or after her termination." *Id.* The Supreme Court of Virginia held that the charter "conferred ... a package of job guarantees" and "[c]onstruing these guarantees together," they "created a substantive right, and in the language of § 1–16, a 'right accrued under the former law' which could not be repealed or 'in any way whatever' affected by the enactment of the new law...." *Id.* at 896. Thus, *Kohler* established that the right to continued public employment constitutes a "substantive

right," that can not be eliminated by subsequent legislative action.

■ Morris and Murray do not assert that either § 1–16 or *Kohler* is inapplicable here; they do not seek to distinguish these authorities nor do they suggest that § 1–16 and *Kohler* represent bad policy that we should somehow overrule. They simply ignore § 1–16 and *Kohler;* neither the statute nor the case is even cited in their briefs. Instead, they claim even if Garraghty "retained a property interest in his job ... a reasonable person reading that statute [§ 2.1–116(16)—the statute excluding wardens from coverage of the Act] could have believed that Garraghty was not possessed of a property interest." That myopic argument is contrary to the established principle that one must look at *"all* the law,"—not just § 2.1–116(16) but also § 1–16 and relevant case law—to determine "the existence and scope of the claimed property interest." *Morris v. City of Danville,* 744 F.2d 1041, 1047 (4th Cir.1984). Of course, a state official "who simply enforces a presumptively valid state statute" will "rarely" lose his immunity from suit. *Swanson v. Powers,* 937 F.2d 965, 969 (4th Cir.1991), *cert. denied,* 502 U.S. 1031, 112 S.Ct. 871, 116 L.Ed.2d 777 (1992). However, Morris and Murray did not simply enforce a presumptively valid state statute. Rather, totally disregarding long-standing Virginia law prohibiting new legislation from being construed to eliminate pre-existing substantive rights, they attempted to apply an amendment to the Personnel Act retroactively to do precisely this. Moreover, they did this in the face of several holdings of this court that the Act established a property interest in continued public employment, *Detweiler,* 705 F.2d at 561; *Buschi,* 775 F.2d at 1255 n. 7; and *Jenkins,* 909 F.2d at 108, and a holding of the Virginia Supreme Court that the right to continued public employment is substantive and cannot be retroactively eliminated. *See Kohler,* 362 S.E.2d at 895–96.

■ The next question is whether Morris and Murray could have reasonably believed that they provided Garraghty with constitutionally sufficient due process, even though they never—before or after terminating him—afforded him the opportunity to confront and examine any witness.[6] In *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court set forth three factors to be balanced in considering due process challenges to governmental deprivations of liberty or property rights. In determining whether due process requirements have been satisfied—whether an appropriate hearing has been provided at a meaningful time and in a meaningful matter—a court should consider:

> [f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

*Id.* at 335, 96 S.Ct. at 903.

As to the first factor, the interest of an employee, like Garraghty, in retaining his employment has long been recognized as substantial. The Supreme Court explained in *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 543, 105 S.Ct. 1487, 1494, 84 L.Ed.2d 494 (1985), "[T]he significance of the private interest in retaining employment cannot be gainsaid. We have frequently recognized the severity of depriving a person of the means of livelihood." Even if a fired worker finds "employment elsewhere, doing so will take some time and is likely to be burdened by the questionable circumstances under which he left his previous job." *Id.* With regard to the second factor, although the right to confront and examine witnesses is not a necessary feature of a pre-deprivation hearing, when this right has not been

---

**6.** Tellingly, defendants' argument on this point is confined to two sentences, for which no authority is cited. They merely assert: "After pretermination hearings, Garraghty was then given an appeal outside of DOC to Secretary Rollins and was, in fact, reinstated as an employee of DOC. It is difficult to imagine that somewhere in these three hearings, Garraghty did not receive due process."

afforded pre-deprivation, the risk of erroneous deprivation of a protected interest is so great, that it has been required post-termination even when the "facts giving rise to the discharge are undisputed." *Kelly v. Smith,* 764 F.2d 1412, 1415 (11th Cir.1985) ("the assurance that a full evidentiary hearing will be forthcoming is one of the primary reasons for allowing the abbreviated pretermination procedures"). *See also Schaper v. City of Huntsville,* 813 F.2d 709, 717 (5th Cir.1987) ("in the event of minimal pretermination safeguards, the substantial private interest one has in not being deprived of his livelihood requires a full hearing after termination").[7] As to the third factor, although there is, of course, some administrative burden in providing an opportunity to confront and examine witnesses, it is hard to see how it can be too great, in view of the fact that the Commonwealth provides this opportunity to all employees covered by the Personnel Act. *See* Va.Code. § 2.1–114.5:1.D.4.d.

In sum, when the *Mathews* factors are applied here we believe it is clear that the administrative burden in providing the right to confront and examine witnesses did not outweigh the important private interest at stake and the value of confrontation and examination in obtaining an accurate result in this case. Furthermore, the importance of the private interest, the value of the right to confront and examine witnesses in the context of a case like this, as well as the government's usual provision of this right, were all well established at the time Garraghty was discharged in 1992. Accordingly, the district court did not err in concluding that Morris and Murray were not entitled to qualified immunity on the theory that they could have reasonably believed that the process they provided to Garraghty was constitutionally sufficient.

Nor is their final argument on this claim—that they are entitled to qualified immunity because they were only responsible for pro-viding Garraghty with pretermination process and that process satisfied the notice and hearing requirements of *Loudermill*—any more compelling. First, in fact, Murray did not provide "mere" pre-termination process. On August 25, 1992, Morris terminated Garraghty effective September 25, 1992. Not until three days after his termination, on September 28, 1992, did Garraghty appeal Morris's decision to Murray. Murray issued his decision upholding Garraghty's termination on October 30, 1992, more than a month after the termination. Thus, there is no question that Murray's review constituted post-termination process.

Moreover, *Loudermill* and its progeny have upheld pre-termination process of the type afforded to Garraghty only when a plaintiff was later afforded a full post-termination hearing. *See, e.g., Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1495 ("Our holding rests in part on the provisions in Ohio law for a full post-termination hearing."); *Holland v. Rimmer,* 25 F.3d 1251, 1258 (4th Cir.1994) (pretermination process adequate when followed by Virginia Personnel Act grievance procedure that includes right to cross-examination); *Linton v. Frederick County Bd. of County Com'rs.,* 964 F.2d 1436, 1441 (4th Cir.1992) (pretermination process adequate, when "full post-termination process was available and relied on to challenge the merits of the county's decision"); *McClelland v. Massinga,* 786 F.2d 1205, 1213 (4th Cir.1986) (predeprivation process upheld because aggrieved party "is entitled to full administrative hearing with panoply of rights attaching to such a hearing, and should he be dissatisfied with the administrative decision is entitled to a judicial review").

Indeed, the precise argument advanced here—that a pretermination decision maker is immune from liability as a matter of law because any denial of due process could have been, but was not, "cured" by an adequate post-termination hearing—has recently been

---

7. We do not hold, or even suggest, that pretermination confrontation rights for public employees are constitutionally required. Such a holding would contravene the Supreme Court's view in *Loudermill* that "[t]he essential requirements of due process" entitle a public employee "to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." 470 U.S. at 546, 105 S.Ct. at 1495 (citations omitted).

expressly rejected by our sister circuits. *See, e.g., Winegar v. Des Moines Indep. Com. School Dist.*, 20 F.3d 895, 901 (8th Cir.1994) ("an assessment of the adequacy of predeprivation procedures depends on the availability of meaningful post deprivation procedures;" even though "predeprivation procedure might have been adequate" if followed by adequate post-deprivation procedure, since the latter did not provide an opportunity to examine or cross-examine witnesses, summary judgment for governmental employer was reversed), *cert. denied,* —— U.S. ——, 115 S.Ct. 426, 130 L.Ed.2d 340 (1994); *Langley v. Adams Co., Colo.*, 987 F.2d 1473, 1480–81 (10th Cir.1993) (affirming denial of qualified immunity to officer who terminated plaintiff *and* officer who affirmed termination because no opportunity for post-termination hearing that included right to confront and examine witnesses).

▄▄ In this case, in which Murray and Garraghty have a history of bad blood, *see supra* n. 1, this conclusion seems particularly warranted. The record indicates that Morris knew when he terminated Garraghty that Garraghty was never to be granted an opportunity by any state administrators to confront or examine any witnesses; accordingly, we cannot hold, as a matter of law, that Morris is immune from liability growing out of the termination, if that decision is ultimately found unlawful. "The severity of depriving a person of the means of livelihood requires that such person have at least one opportunity" for a full hearing, which includes the right to "call witnesses and produce evidence *in his own behalf*," and to "challenge the factual basis for the state's action." *Carter v. Western Reserve Psychiatric Habilitation*, 767 F.2d 270, 273 (6th Cir.1985) (noting that the scope of pre-termination and post-termination hearings are "inextricably intertwined").

### C.

▄▄ Garraghty's other asserted property right is to "a post-termination procedure in the state's grievance procedure." In other

words, he claims he has a property right to receive the precise post-termination process, including a hearing by, and decision from, a three-member panel of neutral decision makers, as provided in state law. *See* Va.Code § 2.1–114.5:1.D.4.b. This claim is meritless.[8]

The Supreme Court has held that state procedures do not create a substantive liberty interest:

Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement.... The State may choose to require procedures for reasons other than protection against deprivation of substantive rights, of course, but in making that choice the State does not create an independent substantive right.

*Olim v. Wakinekona*, 461 U.S. 238, 250–251, 103 S.Ct. 1741, 1748, 75 L.Ed.2d 813 (1983). A number of our sister circuits have applied this reasoning to hold that state procedures similarly do not create substantive property rights. *See, e.g., Swartz v. Scruton*, 964 F.2d 607, 610 (7th Cir.1992) (because "[p]rocedural interests under state law are not themselves property rights that will be enforced in the name of the constitution," plaintiff's claim of "entitlement to the process—the 'method'— by which his merit pay raise is determined is not a constitutionally protected property interest"); *Fusco v. State of Conn.*, 815 F.2d 201, 205–06 (2d Cir.) (right of abutting landowners to appeal zoning decisions is "purely procedural and does not give rise to an independent [property] interest protected by the Fourteenth Amendment"), *cert. denied,* 484 U.S. 849, 108 S.Ct. 149, 98 L.Ed.2d 105 (1987); *Dorr v. County of Butte*, 795 F.2d 875, 877 (9th Cir.1986) (because "a substantive property right cannot exist exclusively by virtue of a procedural right" failure to provide probationary employee all procedures provided in state law does "not give rise to a protected property interest").

▄▄ Conversely, we have found no case in which a federal court has held that state law establishes a property right to partic-

---

8. The district court did not specifically address this due process property interest claim but instead rejected it generally when denying "sum-

mary judgment as to the property interest claims."

ipation in a state's grievance procedure. A holding that state law does create a property right to procedure is, at best, in tension with the Supreme Court's statement in *Loudermill* that "'[p]roperty' cannot be defined by the procedures provided for its deprivation any more than can life or liberty." 470 U.S. at 541, 105 S.Ct. at 1493. Although we have not previously addressed this precise argument, we have recognized that "the mere fact that a state agency violates its own procedures does not *ipso facto* mean that it has contravened federal due process requirements." *Morris*, 744 F.2d at 1048 n. 9. *See also Bowens v. North Carolina Department of Human Resources*, 710 F.2d 1015, 1019 (4th Cir.1983); *Detweiler*, 705 F.2d at 561. Thus, if a state grievance law grants more procedural rights than the constitution requires, failure to comply with state law does not create a federal due process violation. *See Riccio v. County of Fairfax*, 907 F.2d 1459, 1469 (4th Cir.1990).

However, we need not here hold that it is never possible to establish, by state law, a protected property interest in state procedures because, even if this is possible, Garraghty certainly did not have such a clearly established property right here. This is so because the 1985 amendment to the Personnel Act eliminated any property right Garraghty had to the grievance procedure, unless that right was "substantive" or "vested." *Shiflet*, 319 S.E.2d at 753. Garraghty has not cited a single Virginia case that holds that a person enjoys vested rights to any kind of procedure. In fact, the law of Virginia suggests there is no vested right to any particular procedure. For example, the Supreme Court of Virginia has construed § 1–16 "to mean that procedural provisions of a statute in effect on the date of the trial control the conduct of the trial insofar as practicable." *Smith v. Commonwealth*, 219 Va. 455, 248 S.E.2d 135, 148 (1978), *cert. denied*, 441 U.S. 967, 99 S.Ct. 2419, 60 L.Ed.2d 1074 (1979). *Cf. Wyatt v. Virginia Dept of Soc. Serv.*, 11 Va.App. 225, 227–28,

397 S.E.2d 412, 414 (1990) (citing *Crawford v. Halsted & Putnam*, 61 Va. (20 Gratt) 211, 224 (1871) ("[the] mode of conducting a suit or the rules of practice regulating it, are not the subject of·vested rights")). Similarly, the court has held that an aggrieved party had "no right in the strict sense to a particular mode of procedure unless [he] avail[ed] [himself] of it while the statute [was] in force" and that "mere matters of procedure and remedy for their enforcement or preservation may be altered, curtailed or repealed at the will of the legislature so long as a reasonable opportunity and time are afforded to enforce and protect such interests and rights." *Phipps v. Sutherland*, 201 Va. 448, 111 S.E.2d 422, 426 (1959).

In sum, the district court erred to the extent that it held that defendants were not entitled to qualified immunity on Garraghty's claim that they had deprived him of a property right in the state grievance procedure without due process. Even if such a right is possible, there is nothing that suggests it is vested or substantive and so nothing to suggest that any property right to participation in the state grievance procedure survived the 1985 amendment, let alone that this was clearly established.

### III.

For the foregoing reasons, the portions of the district court order (1) denying Young, Broughton, Zimmerman, and Moore qualified immunity on both of Garraghty's property right due process claims, and (2) denying Morris and Murray qualified immunity on Garraghty's claim of a property right to participation in the state grievance procedure are reversed. The portion of the district court's order denying Morris and Murray qualified immunity on Garraghty's other property right due process claim is affirmed. The case is remanded for further proceedings consistent with this opinion.[9]

9. We deny Garraghty's motion to supplement the record on appeal. *See Dakota Industries, Inc. v. Dakota Sportswear, Inc.*, 988 F.2d 61, 63 (8th Cir.1993); *Castner v. Colorado Springs Cablevision*, 979 F.2d 1417, 1423 (10th Cir.1992); *First*

*Alabama Bank of Montgomery v. Parsons Steel*, 825 F.2d 1475, 1487 (11th Cir.1987), *cert. denied*, 484 U.S. 1060, 108 S.Ct. 1015, 98 L.Ed.2d 980 (1988).

*AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.*