64 F.3d 659
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Carolyn SIZEMORE, Plaintiff-Appellee,
v.
Randall ALIFF, individually and in his official capacity as
Sheriff of Wyoming County, West Virginia,
Defendant-Appellant.
 No. 94-2347.
 United States Court of Appeals, Fourth Circuit.
 Argued May 3, 1995.
Decided Aug. 25, 1995.
 
 ARGUED: Charles R. Bailey, SHUMAN, ANNAND & POE, Charleston, WV, for Appellant. David L. White, BRUMFIELD & WATSON, Bluefield, WV, for Appellee. ON BRIEF: Belinda B. Neal, SHUMAN, ANNAND & POE, Charleston, WV, for Appellant.
 S.D.W.Va.
 REVERSED AND REMANDED.
 OPINION
 PER CURIAM:
 
 
 1
 Randall Aliff appeals the district court's denial of individual-capacity qualified immunity and summary judgment on the merits in this Sec. 1983 action brought against him by Carolyn Sizemore, the former Chief Tax Deputy of Wyoming County, West Virginia, for allegedly firing her in violation of the First Amendment. We reverse the denial of qualified immunity, decline to exercise pendent appellate jurisdiction over the summary judgment issue, and remand for further proceedings on the remaining issues.
 
 I.
 
 2
 Aliff was elected sheriff of Wyoming County in 1992 after defeating former sheriff James Bolt in the Democratic primary. Sizemore was Bolt's chief tax deputy. On December 29, 1992, Aliff fired Sizemore and replaced her with Mervin Cook. Sizemore sued Aliff, both individually and in his official capacity as sheriff, under 42 U.S.C. Sec. 1983 (1988), alleging that she was fired solely because of her political patronage of his opponent, the former sheriff, thereby violating her constitutional rights of free speech. She also raised a state law claim for retaliatory discharge.
 
 
 3
 Aliff moved for summary judgment on three alternative grounds. First, he contended that he fired Sizemore for non-political reasons. Next, he asserted that her job position was such that he could permissibly fire her on raw political patronage grounds. Finally, he claimed a qualified immunity defense. On October 14, 1994, the district court denied Aliff's motion for summary judgment, finding that the grounds for Sizemore's discharge involved unresolved issues of fact. In its memorandum opinion and order, the district court also denied Aliff qualified immunity because it found that Sizemore had a constitutional right not to be fired for political reasons which was clearly established at the time Aliff fired her and of which a reasonable person in Aliff's position would have known. Aliff appeals the district court's order, raising the denial of qualified immunity as jurisdictional grounds for appeal. See Mitchell v. Forsyth, 472 U.S. 511, 530 (1985); Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949).
 
 II.
 
 4
 Aliff is immune from personal liability for the performance of official discretionary duties if, at the time he discharged Sizemore, his "conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To rule on qualified immunity, a court must (1) identify the specific constitutional or statutory right allegedly violated; (2) determine whether that right, as alleged by the plaintiff, was clearly established at the time it was allegedly violated; and, if so (3) decide whether a reasonable person in the official's position would have known that his actions would violate that right. Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir.1992). The very action in question, however, need not have been previously held unlawful to be "clearly established" as a constitutional violation. Gooden v. Howard County, 954 F.2d 960, 968 (4th Cir.1992) (en banc). Basically, "[t]he contours of the right [must be] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). In other words, Aliff must have crossed a constitutional "bright line." Gooden, 954 F.2d at 968.
 
 
 5
 Identification of the specific right violated and determination of whether the right was clearly established at the time it was allegedly violated "present pure questions of law for the courts" which we review de novo. Id. Whether a reasonable person in Aliff's position would have known his conduct violated constitutional rights that were clearly established at the time he fired her "may require factual determinations respecting disputed aspects of that conduct." See Pritchett, 973 F.2d at 312.[1] This issue "may or may not be then subject to deter mination as a matter of law. If there are genuine issues of historical fact respecting [Aliff]'s conduct or its reasonableness under the circumstances, summary judgment is not appropriate, and the issue must be reserved for trial." Id. at 313.
 
 
 6
 The district court correctly determined that the specific right allegedly violated was the right of a West Virginia chief tax deputy not to be discharged on the sole basis of her political affiliation.[2] Therefore, to address Aliff's qualified immunity defense, we must determine whether, in December 1992, a chief tax deputy had a clearly established constitutional right that prohibited her dismissal on raw political patronage grounds alone, and, if so, whether a reasonable person in Aliff's position would have known of this right at that time.[3] By 1992, the United States Supreme Court clearly had established that the political patronage dismissal of a low-level public employee violates that employee's First Amendment rights to freedom of expression and association unless she holds a policymaking or confidential position requiring political loyalty. Branti v. Finkel, 445 U.S. 507, 518 (1980); Elrod v. Burns, 427 U.S. 347, 355-60 (1976); Jones v. Dodson, 727 F.2d 1329, 1338 (4th Cir.1984). While holding that the patronage dismissal of non-policymaking public employees was unconstitutional, Elrod created an exception to that rule allowing the patronage dismissal of public employees in policymaking positions.
 
 
 7
 Elrod, 427 U.S. at 372-73. Branti narrowed this policymaking exception to permit dismissal solely for political patronage only when "party affiliation is an appropriate requirement for the effective performance of the public office involved." Branti, 445 U.S. at 518. Courts read the two opinions together and apply a combined Elrod-Branti analysis to determine whether a patronage dismissal has violated a public employee's constitutional rights. Stott v. Hayworth, 916 F.2d 134, 140 (4th Cir.1990). This interpretation "exempt[s] from protection most policymaking, and confidential employees." Id. at 142 (quotation omitted).[4]
 
 
 8
 Relying primarily on our 1984 case of Jones v. Dodson to deny qualified immunity, the district court determined that in December of 1992 the right was clearly established that "the position of chief tax deputy [was] not subject to dismissal based on raw political patronage." (J.A. 561.) In Jones, the jury returned a verdict against a Virginia sheriff and in favor of a dispatcher and a law enforcement deputy[5]fired by that sheriff. Jones, 727 F.2d at 1333. The jury found by special verdict that the sheriff fired the plaintiffs solely for their political affiliation. Id. The district court granted the sheriff's motion for a judgment n.o.v. against the law enforcement deputy. Id. This Court reversed and remanded, holding that "if [the law enforcement deputy]'s discharge was solely because of his political party affiliation, it could not as a matter of law be justified." Id. at 1338. Without discussing the specific duties of the deputy sheriff's position, we held that law enforcement deputies in Virginia were not subject to discharge on raw political patronage grounds, stating:
 
 
 9
 [u]nder the Branti test, we do not believe that the duties of deputy sheriffs, no matter what the size of the office, or the specific position of power involved, or the customary inti macy of the associations within the office, or the undoubted need for mutual trust and confidence within any law enforcement agency, could be found to involve policymaking related to "partisan political interests" and to have access to confidential information "bearing ... on partisan political concerns."
 
 
 10
 Id. (quoting Branti, 445 U.S. at 519). From this language, the district court in this case concluded that we "firmly announced that under no circumstances can a deputy sheriff be subject to dismissal on raw political patronage grounds." (J.A. 556 (citing Jones, 727 F.2d at 1338).)
 
 
 11
 We believe that the district court erred in denying qualified immunity. We cannot conclude that Jones 's rationale for providing protection against political patronage dismissal to a sheriff's law enforcement deputy also clearly applied to a sheriff's chief tax deputy. Instead, we hold that Aliff is entitled to qualified immunity because it was not clearly established in 1992 whether a chief tax deputy in West Virginia was a policymaking employee who was unprotected from dismissal on political patronage grounds.
 
 
 12
 Although Sizemore argues that Jones applies to chief tax deputies because that decision did not distinguish between chief tax deputies and law enforcement deputies, we note that Jones did not make any comparison between a tax deputy and a law enforcement deputy. In fact, it did not even mention the duties of a law enforcement deputy sheriff at all. As discussed below, other case law around 1992 indicates that the Elrod-Branti analysis of political patronage dismissals depends on an individual assessment of the duties of the position formerly held by the public employee. See, e.g., Stott, 916 F.2d at 145. Courts permitted the patronage dismissal of a public employee whose job duties closely resembled those of a position already found to fall within the Elrod-Branti exception. Cf. Raker v. City of Charleston, 782 F.Supp. 308, 311 (S.D.W.Va.1992) (examining job duties of five dismissed employees to determine whether each position "involves government decision making on issues where there is room for political disagreement" and whether each "position also falls squarely within that of a policy maker, communicator, or some other position for which party affiliation is an appropriate requirement"). Neverthe less, we do not believe that the guidance provided by existing case law in 1992 was so broad that the constitutional protection against such dismissals given to law enforcement deputies should also apply to prohibit a similar dismissal of a chief tax deputy, or that a reasonable official clearly should have known of such. This is particularly so in light of the different duties and responsibilities required of employees in these two positions, law enforcement deputy and tax deputy. A chief tax deputy does not fall within the statutory definition of a deputy sheriff as an armed law enforcement officer, W. Va.Code Sec. 7-14-12. Adkins v. Miller, 421 S.E.2d 682, 697 n. 17 (W.Va.1992) (Neely, J., dissenting). Rather, a chief tax deputy is appointed by the sheriff pursuant to W. Va.Code Sec. 7-7-7 to "assist [the sheriff] in the discharge of [his] official duties" as ex officio county treasurer. W. Va.Code Secs. 6-8-5, 7-5-1. Moreover, under W. Va.Code Sec. 6-3-2, a deputy sheriff in West Virginia is a civil service employee that may only be fired "for good cause," see Deputy Sheriff's Ass'n v. County Commission, 376 S.E.2d 626, 631 (W.Va.1988), whereas a tax deputy is not a civil service employee, Adkins, 421 S.E.2d at 697 & n. 17, who may be fired at-will, see Stott, 916 F.2d at 142. Thus, we disagree with the district court's determination that Jones clearly established a chief tax deputy's constitutional right against patronage dismissal.
 
 
 13
 As we have indicated, Sizemore's job duties were not sufficiently similar to those of a law enforcement deputy sheriff to conclude, as the district court did based on Jones, that the chief tax deputy is a position protected from raw political patronage discharge. Jones notwithstanding, an individualized[6] examination of the chief tax deputy position's duties makes clear that a reasonable official in Aliff's position could have concluded that the chief tax deputy position fell into the Elrod-Branti exception. When a reasonable official could believe after an inquiry into the issue that the right would not be violated, qualified immunity attaches. DiMeglio v. Haines, 45 F.3d 790, 795 (4th Cir.1995).
 
 
 14
 The parties do not dispute that Sizemore held a supervisory position, was "responsible for the tax office," (J.A. 555) and was directly accountable to the sheriff for her actions. The chief tax deputy advised the sheriff in personnel matters and hired seasonal workers for the tax office. The chief tax deputy was also the sole county employee most directly responsible for assuring that the sheriff fulfilled his duties as tax collector and as ex officio treasurer of the county and represented the sheriff on tax matters before the county commission. Holding a supervisory position and having responsibility for the county tax office likely entail sufficient discretion over issues and implementation of goals involving "room for political disagreement" and moreover indicate that the chief tax deputy position is one requiring political loyalty and is subject to political patronage dismissal. See Raker, 782 F.Supp. at 313. This is particularly so considering that the chief tax deputy is in charge of the entire tax office, and answers only to the sheriff for the manner in which the tax office operates. While the chief tax deputy holds an appointed position, the sheriff is elected by the people of the county and is ultimately responsible to the electorate for the efficient management of the tax office and the collection of tax revenues. Thus, the degree of discretion held by the chief tax deputy, whether she served as an advisor to the sheriff on tax matters, and whether the position involved implementation of broad goals, all could support a conclusion, based on the law as of 1992, that a reasonable official could consider that Sizemore held a policymaking position and was thus subject to political discharge.[7] See Stott, 916 F.2d at 140.
 
 
 15
 Because in 1992 it was not clearly established whether a tax deputy could be fired for political patronage, we find that the district court erred in denying individual-capacity qualified immunity status to Aliff, and remand for the district court to enter an order granting Aliff qualified immunity in his individual capacity and to proceed with this case against Aliff in his official capacity on the remaining issues.
 
 III.
 
 16
 Because we have jurisdiction over the district court's interlocutory ruling denying qualified immunity, Aliff urges us to address the district court's denial of his motion for summary judgment on the merits as well. He does not, and could not, argue that we have independent jurisdiction to review the denial of summary judgment under the collateral order doctrine of Cohen, 337 U.S. at 546. See Swint v. Chambers County Comm'n, --- U.S. ----, 115 S.Ct. 1203, 1207 (1995) (suggesting that denial of a summary judgment motion is not immediately appealable with a denial of qualified immunity under Cohen ). He argues instead that we should exercise pendent appellate jurisdiction pursuant to Roberson v. Mullins, 29 F.3d 132 (4th Cir.1994), which states:
 
 
 17
 When we properly have jurisdiction over an interlocutory ruling by the district court, pendent appellate jurisdiction permits us to consider another district court ruling in the same case that is not independently appealable if the issues involved in the two rulings "substantially overlap and review will advance the litigation or avoid further appeals." Id. at 136 (citing Akers v. Caperton, 998 F.2d 220, 223 (4th Cir.1993)).
 
 
 18
 During oral argument, we asked the parties to address the impact of the recently filed Swint decision on pendent appellate jurisdiction. Aliff correctly notes that the Supreme Court in Swint declined to decide when, or if, an appellate court may exercise pendent appellate jurisdiction. Swint, 115 S.Ct. at 1212. The Court noted that the Chambers County Commission had not asserted sufficient grounds to support pendent party appellate jurisdiction because "the District Court's decision to deny the Chambers County Commission's summary judgment motion was [not] inextricably intertwined with that court's decision to deny the individual defendants' qualified immunity motions," and because appellate review of the summary judgment decision "was [not] necessary to ensure meaningful review of" the denial of qualified immunity. Id. The Court also noted that "[t]he Federal Courts of Appeals have endorsed the doctrine of pendent appellate jurisdiction, although they have expressed varying views about when such jurisdiction is properly exercised." Id. at 1209 n. 2 (reviewing each circuit's test for jurisdiction and citing Roberson, 29 F.3d at 136).
 
 
 19
 To the extent that the exercise of pendent appellate jurisdiction remains a matter within our discretion, DiMeglio, 45 F.3d at 807, we decline to exercise it here. See Garraghty v. Virginia, 52 F.3d 1274, 1279 n. 5 (4th Cir.1995) (declining to exercise pendent appellate jurisdiction over related issue in light of Swint ).
 
 
 20
 REVERSED AND REMANDED.
 
 
 
 [1]
 We note that a district court should first "determine[ ] that the plaintiff has alleged a violation of a right clearly established at the time the actions occurred" before it "proceed[s] to determine whether a reasonable person in the official's position would have known that his actions violated that right." DiMeglio v. Haines, 45 F.3d 790, 794 n. 1 (4th Cir.1995). Whether a defendant " 'neither knew nor should have known of the relevant legal standard' " is a question which "turn[s] 'primarily on objective factors' " and is thus a pure question of law subject to de novo review on appeal. Id. (quoting Harlow, 457 U.S. at 819). Any disputed aspects of Aliff's conduct in firing Sizemore would require a factual determination subject to clear error review. Pritchett, 973 F.2d at 312
 
 
 [2]
 This is otherwise known as a raw political patronage dismissal
 
 
 [3]
 Sizemore can prevail on her claim that Aliff fired her for raw political patronage only if (1) political party affiliation is not an appropriate requirement for her job position and (2) Aliff discharged her for political affiliation alone, and not for any other valid reason unrelated to the exercise of First Amendment rights. Jones v. Dodson, 727 F.2d 1329, 1335 (4th Cir.1984); Neely v. Mangum, 396 S.E.2d 160, 163 (W.Va.1990)
 
 
 [4]
 Policymaking employees who retain constitutional protection against patronage dismissal by their employers are those whose positions involve "no rational connection between shared ideology and the performance of [their] low-level job[s]." Akers v. Caperton, 998 F.2d 220, 223 (4th Cir.1993)
 
 
 [5]
 Although the law enforcement deputy held the title of "Chief Deputy," he had no duties or responsibilities in addition to those of the other law enforcement deputies. Jones, 727 F.2d at 1331
 
 
 [6]
 We determined in Stott v. Hayworth that, in patronage dismissal cases, "the need to make inquiry into the positions held by the litigants and the propriety of requiring political affiliation with that particular job" results in "the need for individual determination of like patronage claims." 916 F.2d at 145 (emphasis added). Several cases at the time of Sizemore's dismissal provided guidance for determining whether an official's position was a policymaking one, and thus not protected under Elrod and Branti against termination for political patronage. See, e.g., Stott, 916 F.2d 134; Raker v. City of Charleston, 782 F.Supp. 308, 310-313 (S.D.W.Va.1992). In Stott, we provided examples of job positions subject to dismissal and those not subject to dismissal based upon political affiliation, and noted that application of the Elrod-Branti test "has produced seemingly inconsistent and unpredictable results" among the various jurisdictions. Stott, 916 F.2d at 144. Thus, we concluded, "these cases [involving similar job positions or duties] must be considered individually." Id
 
 
 [7]
 Interestingly, under West Virginia law it was not clearly established in 1992 whether a sheriff could dismiss a tax deputy (not the chief tax deputy as in the present case) on political patronage grounds. The West Virginia Supreme Court of Appeals had an opportunity to address the precise issue of "whether the [tax deputy] position falls within the policymaker/confidential exception" of Stott, but chose instead to remand the issue for an exact determination of "the nature of the employment of the position held." Adkins v. Miller, 421 S.E.2d 682, 689 (W.Va.1992). In 1992, Adkins indicated that the law in West Virginia was not clearly established whether a tax deputy held sufficient policymaking duties to allow political dismissal