733 F.2d 260
 Peter J. LASKARIS, Appellant,
v.
Richard THORNBURGH, Governor of the Commonwealth of
Pennsylvania, Thomas Larson, Secretary of the
Pennsylvania Department of
Transportation, Dennis Hilton
and Representative
John Peterson,
Richard Thornburgh, Thomas Larson and John Peterson, Appellees.
Michael SKAPURA, Appellant,
v.
Richard THORNBURGH, Governor of the Commonwealth of
Pennsylvania, Thomas Larson, Secretary of the Pennsylvania
Dept. of Transportation, John Harhigh, Director of Bureau of
Personnel; James I. Scheiner, Deputy Secretary for
Administration of the Pennsylvania Department of
Transportation; all in both their official and individual capacities,
Richard Thornburgh, Thomas Larson and James I. Scheiner, Appellees.
 No. 83-5191.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 26, 1984.
Decided April 24, 1984.
Rehearing Denied May 18, 1984.
 
 Mark D. Speaker, argued, Gilbert J. Helwig, Wendy Taylor Homyak, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for appellants.
 Norman H. Stark, argued, MacDonald, Illig, Jones & Britton, Erie, Pa., for appellee Peterson.
 Carleton O. Strouss, argued, Robert H. Raymond, Jr., Spencer A. Manthorpe, Jay C. Waldman, Office of Chief Counsel, Pa. Dept. of Transp., Harrisburg, Pa., Alton P. Arnold, Jr., Deputy Atty. Gen., Pittsburgh, Pa., for Thornburgh, Larson & Scheiner.
 Before ADAMS and GARTH, Circuit Judges, and COHEN,* District Judge.
 OPINION OF THE COURT
 GARTH, Circuit Judge:
 
 
 1
 In this case appellants Peter J. Laskaris and Michael Skapura contend that they were improperly denied a jury trial on their claims that they were unlawfully discharged because of their political affiliation. We hold that Laskaris and Skapura's claims for compensatory and punitive damages entitled them to a jury trial. The district court's failure to award a jury trial, however, was harmless, because the evidence produced at trial was insufficient to avoid a directed verdict in favor of the defendants. Thus we affirm.
 
 I.
 
 2
 Laskaris and Skapura were employees of the Pennsylvania Department of Transportation (PennDOT). Laskaris began his job as a Personnel Analyst 2, Labor Relations Coordinator in 1974. Skapura became Director of Municipal Services, Administrative Officer 3 in 1971. Each was discharged on August 15, 1979, about eight months after defendant Richard Thornburgh took office as Governor of Pennsylvania.
 
 
 3
 Laskaris (on Nov. 6, 1980) and Skapura (on July 24, 1981) brought suit in federal district court under 42 U.S.C. Secs. 1983 and 1985 (1976),[1] alleging that they were discharged because of their political affiliation. They contended that defendants Thornburgh, Thomas Larson (Secretary of PennDOT), James Scheiner (Deputy Secretary), and John Peterson[2] (a Pennsylvania State Representative), who were Republicans, were responsible for the discharge of Laskaris and Skapura, and acted because Laskaris and Skapura were Democrats. (John Harhigh, Personnel Director at PennDOT, was also named a defendant in the initial complaints, but he was dismissed by consent of all parties at the beginning of the trial). They sought, inter alia, reinstatement, back pay, and compensatory and punitive damages.
 
 
 4
 The defendants moved to dismiss on the ground that the eleventh amendment to the U.S. Constitution immunized them from suit. The district court granted the motion to dismiss, but this court reversed and remanded for trial. Laskaris v. Thornburgh, 661 F.2d 23 (3d Cir.1981).
 
 
 5
 On August 31, 1982, the district court granted defendants' motion to strike Laskaris and Skapura's demand for a jury trial. The case proceeded to trial without a jury. After Laskaris and Skapura had presented their evidence, the court granted Governor Thornburgh's motion to dismiss under Fed.R.Civ.P. 41(b) on the ground that upon the facts and the law the plaintiffs had shown no right to relief against him. The other defendants also filed Rule 41(b) motions, which the court held in abeyance until the close of trial.
 
 
 6
 After trial, the court granted Representative Peterson's 41(b) motion, and held Larson and Scheiner not liable under sections 1983 and 1985. The court adopted Larson and Scheiner's findings of fact and conclusions of law. It held that Laskaris and Skapura had failed to demonstrate that their political affiliation was a motivating factor in the decision by Larson and Scheiner to dismiss them. Rather, the court found, Laskaris and Skapura were discharged as part of an overall reorganization of PennDOT. The court found that their dismissal was motivated by a desire to improve PennDOT's operations and not for any political reasons. Moreover, the court found, there was no evidence that either Governor Thornburgh or Representative Peterson participated in the dismissal decision. Thus the court entered judgment for all defendants.[3] Laskaris v. Thornburgh, No. 80-178 (W.D.Pa. Jan. 27, 1983); Skapura v. Thornburgh, No. 81-168 (W.D.Pa. Jan. 27, 1983).
 
 II.
 
 7
 Laskaris and Skapura sought compensatory or punitive damages in addition to their requests for back pay, reinstatement and declaratory and injunctive relief. A party seeking compensatory and punitive damages or other legal relief under 42 U.S.C. Sec. 1981 has a right to a jury trial. Edwards v. Boeing Vertol Co., 717 F.2d 761, 763 (3d Cir.1983); see Curtis v. Loether, 415 U.S. 189, 194, 94 S.Ct. 1005, 1008, 39 L.Ed.2d 260 (1974) (42 U.S.C. Sec. 3612). This is true even though the claim is based upon the same facts that support equitable claims. Edwards, 717 F.2d at 763. Thus, although the request for back pay under section 1983 seeks only equitable relief, Gurmankin v. Costanzo, 626 F.2d 1115, 1122-23 (3d Cir.1980), a claim for compensatory and punitive damages is a legal claim entitling the plaintiff to a jury trial. E.g., Dolence v. Flynn, 628 F.2d 1280, 1282 (10th Cir.1980) (per curiam) (citing cases). See Moore v. Sun Oil Co., 636 F.2d 154 (6th Cir.1980).
 
 
 8
 Thornburgh et al. argue that even if this is true, Laskaris and Skapura's claims for compensatory and punitive relief must be supported in order to entitle them to a jury trial. They cite Hildebrand v. Board of Trustees, 607 F.2d 705 (6th Cir.1979), and Lynch v. Pan American World Airways, 475 F.2d 764, 765 (5th Cir.1973), as support for this proposition. Hildebrand held that when it appears prior to trial that no genuine issue of material fact exists with respect to damages, there is no right to a jury trial on those claims. Lynch held that unsupported allegations of compensatory and punitive damages do not alter the equitable nature of a proceeding.
 
 
 9
 To the extent that these cases can be read to require a plaintiff to aver specific facts or evidence in support of his claim for compensatory or punitive damages, we reject them as being incompatible with our precedents. As long as it appears from the pleadings that there is an issue triable of right by a jury, the plaintiff is entitled to a jury trial. Canister Co. v. Leahy, 182 F.2d 510, 513 (3d Cir.1950), cert. denied, 342 U.S. 893, 72 S.Ct. 201, 96 L.Ed. 669 (1951). In considering a demand for a jury trial, a court looks to the substance of the pleadings; the test is whether the issues raised are triable to a jury. Owens-Illinois, Inc. v. Lake Shore Land Co., 610 F.2d 1185, 1189 (3d Cir.1979); Plechner v. Widener College, Inc., 569 F.2d 1250, 1251 (3d Cir.1977).
 
 
 10
 Compensatory damages for deprivation of constitutionally protected rights are available under the civil rights statutes. Carey v. Piphus, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (Sec. 1983); see Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 460, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975) (Sec. 1981). Compensation for damages upon discharge from employment is not limited to back pay. Bueno v. City of Donna, 714 F.2d 484, 493-94 (5th Cir.1983) (Secs. 1985, 1986). Punitive damages are also available, at least where the plaintiff shows that the defendants' conduct is motivated by evil motive or intent, or that it involves reckless or callous indifference to others' federally protected rights. Smith v. Wade, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). Thus the claims were cognizable under the statutes pleaded, and the complaint was sufficient to entitle Laskaris and Skapura to a jury trial.
 
 III.
 
 11
 Error in striking the demand for a jury trial is harmless if a directed verdict for the defendant would have been warranted. See Amoco Oil Co. v. Torcomian, 722 F.2d 1099, 1105 (3d Cir.1983); EEOC v. Corry Jamestown Corp., 719 F.2d 1219, 1225 (3d Cir.1983). A verdict may be directed for a defendant only where there is insufficient evidence from which a jury could reasonably find for the opponent, the court viewing the evidence in the light most favorable to the opponent, and giving him the advantage of every fair and reasonable inference. See, e.g., Fireman's Fund Ins. Co. v. Vide Freeze Corp., 540 F.2d 1171, 1177-78 (3d Cir.1976), cert. denied, 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977). A court cannot weigh the evidence or judge its credibility. Id. If there is conflicting evidence that could reasonably lead to inconsistent inferences, a verdict may not be directed. Id.
 
 
 12
 In order to avoid a directed verdict, and bring his case to a jury, a plaintiff alleging that he was discharged in violation of his first amendment rights must show that his protected conduct was a substantial or motivating factor in the decision; it is only then that the defendant must prove by a preponderance of the evidence that the decision would have been the same in the absence of the protected conduct. Mount Healthy Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977).
 
 
 13
 Laskaris and Skapura alleged that their first amendment rights were infringed because their political affiliation was the reason for their being discharged. First amendment rights of nonpolicymaking employees like Laskaris and Skapura[4] are violated if their respective political affiliations are the sole reason for discharge. Branti v. Finkel, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); Elrod v. Burns, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Branti and Elrod, however, merely held it "sufficient" to show that political affiliation was the sole reason for the discharge. First amendment rights are not less violated if political affiliation is not the "sole" reason but only a "substantial" factor in the decision. E.g., Mitman v. Glascott, 557 F.Supp. 429, 431 (E.D.Pa.1983), aff'd, 732 F.2d 146 (3d Cir.1984); see, e.g., McKinley v. City of Eloy, 705 F.2d 1110, 1115 (9th Cir.1983). Thus the Branti/Elrod plaintiff's burden of proof is to be determined by the Mount Healthy standard. Jones v. Dodson, 727 F.2d 1329 (4th Cir.1984); Nekolny v. Painter, 653 F.2d 1164 (7th Cir.1981), cert. denied, 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 139 (1982); Mitman v. Glascott, supra; McMullan v. Thornburgh, 508 F.Supp. 1044, 1050-51 (E.D.Pa.), aff'd, 671 F.2d 496 (3d Cir.1981).
 
 
 14
 Consequently, we must decide whether Laskaris and Skapura adduced sufficient evidence from which a jury could reasonably find that their political affiliation was a substantial or motivating factor in their discharge.[5] In the present context, evidence must at least be produced from which it could be found that the fact that they were Democrats was a substantial or motivating factor in their dismissal.[6] Implicit in this requirement is that Laskaris and Skapura produce evidence sufficient to show that the defendants knew their political persuasions. We hold that they did not.
 
 
 15
 Laskaris and Skapura testified that they were Democrats when discharged. Laskaris, but not Skapura, presented evidence that his replacement (Diehl) was a Republican.[7] But there is simply insufficient evidence to show that any of the defendants knew that Laskaris and Skapura were Democrats. Without that knowledge as a predicate, the fact that Diehl, who was a Republican, replaced Laskaris, cannot by itself support an inference that Laskaris's discharge was politically motivated.
 
 
 16
 Both Scheiner and Harhigh stated that they knew that PennDOT had a number of political patronage jobs at the time of the discharges. Harhigh stated that he and Larson had several discussions from February to October 1979 about eliminating positions in PennDOT. All the positions Harhigh and Larson discussed eliminating were patronage jobs. Representative Peterson wrote a letter to Larson in April 1979, saying that it was time to "clean out the political hacks" at PennDOT; he said he was disappointed that things at PennDOT had not improved after Thornburgh had been elected governor because he had expected that Governor Thornburgh would be the one who would "clean house with the Thornburgh broom" (emphasis in original).
 
 
 17
 Representative Peterson wrote that PennDOT would not receive needed revenues unless citizens saw a drastic improvement in operations, and he suggested terminating the "incompetent political hacks" at the top of the management structure. Representative Peterson made other suggestions for restructuring PennDOT to eliminate management positions and replace these with maintenance workers. Scheiner and Representative Peterson stated that Scheiner received this letter, and that when Scheiner met with Representative Peterson the letter was briefly mentioned. Representative Peterson stated that Larson also received the letter, and that when Larson met with him they went over the letter paragraph-by-paragraph; Larson said he would be revamping PennDOT and had received suggestions from others that paralleled some of Representative Peterson's. According to Representative Peterson, he and Governor Thornburgh discussed the letter's suggestion that PennDOT should "clean house," but the positions they discussed eliminating were never eliminated.
 
 
 18
 This evidence by itself is insufficient to show that any defendants knew that Laskaris and Skapura were Democrats. Even if Larson and Scheiner knew that Laskaris and Skapura's positions were "patronage" jobs, there were 15,000 such jobs, according to Harhigh. This evidence of "patronage" knowledge is too vague and insubstantial to demonstrate that any employee's discharge was politically motivated, especially where the evidence was that only about 50 employees in those jobs were dismissed (and no evidence as to their political affiliation was adduced).
 
 
 19
 Moreover, there is insufficient evidence to show any nexus between Representative Peterson's letter and the plaintiffs' discharge. Neither is there evidence to show that the letter even affected Larson and Scheiner's decision to discharge Laskaris and Skapura. Finally, as previously discussed, there is no evidence that Governor Thornburgh knew that Laskaris and Skapura were Democrats; nor is there evidence that he had any influence on the discharge decision, much less that he was politically motivated to discharge the plaintiffs.
 
 
 20
 In sum, while the evidence has about it a vague aura of politically motivated patronage firings, similar to the discharge described in Elrod, it is far too insubstantial to show that the individual plaintiffs here were discharged because of their political affiliation. On such evidence as was presented, a jury's verdict for the plaintiffs, had a jury been impanelled, could only have been speculative.
 
 
 21
 Thus, having examined the record in a light most favorable to Laskaris and Skapura, and having reviewed that evidence comprising the record and all reasonable inferences capable of being drawn therefrom, we are satisfied that the present record is "critically deficient of that minimum quantum of evidence from which a jury might reasonably afford relief." Denneny v. Siegel, 407 F.2d 433, 439 (3d Cir.1969).
 
 
 22
 This being so, the district court's refusal to grant Laskaris and Skapura a jury trial, while error, was nevertheless harmless.
 
 IV.
 
 23
 The district court entered three orders on January 27, 1983, holding the defendants Thornburgh, Larson, Scheiner, and Peterson not liable to Laskaris and Skapura. The orders of the district court entering judgment in favor of the defendants and against Laskaris and Skapura will be affirmed.
 
 
 24
 Each party will bear its own costs.
 
 
 25
 ADAMS, Circuit Judge, dissenting.
 
 
 26
 While I join the majority in concluding that the plaintiffs were entitled to a jury trial, I am troubled by the ultimate holding that the denial of this fundamental right was harmless. Because the right to a jury trial is expressly protected by the Constitution, our scrutiny of any deprivation of this right must be rigorously exacting. Measured under this standard, I would vacate the district court's judgment and remand for a jury trial.
 
 
 27
 I find it difficult to maintain, as the majority does, that the record provides no basis from which a jury could infer that these discharges were politically motivated. Plaintiffs introduced evidence that could support findings that: 1) they were well-known figures in their political party; 2) they were holders of patronage positions; 3) they were discharged at a time when a "political sweep" had been ordered into effect; and 4) they were replaced by individuals of no greater qualification or ability than they possessed. From these factors, it would appear that a jury could infer that the plaintiff's political affiliations were known to defendants Thomas Larson and James Scheiner[1] and were the predicate for the discharges. Whatever the wisdom of entrenching in office the beneficiaries of prior patronage appointments, the fact remains that under the current Supreme Court case law the plaintiffs in this action presented a prima facie case of unconstitutionally motivated discharge.
 
 
 28
 Given the considerable solicitude accorded constitutional rights, I cannot agree that the denial of a jury trial was harmless as a matter of law and I would therefore remand for a jury trial on the claims against Thomas Larson and James Scheiner.
 
 
 29
 Before SEITZ, Chief Judge, ALDISERT, ADAMS, GIBBONS, HUNTER, WEIS, GARTH, HIGGINBOTHAM, SLOVITER and BECKER, Circuit Judges, and COHEN, District Judge.*
 
 
 30
 The petition for rehearing filed by appellants, Peter J. Laskaris and Michael Skapura, in the above-entitled case having been submitted to the judges who participated in the decision of this court, and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.
 
 
 31
 GIBBONS and A. LEON HIGGINBOTHAM, Jr., Circuit Judges, would grant the petition for rehearing for the reasons set forth in Judge ADAMS' opinion dissenting from the panel decision.
 
 
 32
 SLOVITER, Circuit Judge, would grant the petition for rehearing.
 
 
 
 *
 Honorable Mitchell H. Cohen, United States District Judge for the District of New Jersey, sitting by designation
 
 
 [1]
 They also appended various state law claims. The court held, after trial, that there was a "woeful lack of evidence" to support these allegations. Laskaris and Skapura do not appear to challenge this holding on appeal
 
 
 [2]
 Representative Peterson was not named as a defendant in Skapura's action
 
 
 [3]
 The court also held, although it did not need to do so, that Larson and Scheiner had established the defense of official immunity, see Gomez v. Toledo, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). In view of our disposition of the case, we do not reach the issue of official immunity
 
 
 [4]
 No issue was raised in this case as to whether either Laskaris or Skapura was a policymaking employee (i.e., one whose party affiliation is "an appropriate requirement for the effective performance of the public office involved", Branti v. Finkel, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980)). The defendant bears the burden of proof on this issue. Ness v. Marshall, 660 F.2d 517, 522 (3d Cir.1981); Rosenthal v. Rizzo, 555 F.2d 390, 394 n. 5 (3d Cir.1977)
 
 
 [5]
 Laskaris and Skapura contend that we should consider evidence that was not adduced at trial, but would be upon remand. Under the directed verdict standard referred to in text, supra, such extra-record evidence cannot be considered
 
 
 [6]
 Laskaris and Skapura presented much evidence in support of the proposition that they were qualified for the positions that replaced theirs, and that they were competent to perform in those positions. That evidence, without more, does not bear upon the gravamen of their complaint that they were discharged by Republicans because they were Democrats
 
 
 [7]
 This evidence was hearsay (Laskaris had heard from a union representative that Diehl was a Republican), but it was admitted, and its admission is not challenged on appeal
 
 
 [1]
 I agree with the majority that no evidence implicating Governor Richard Thornburgh in the discharges was produced at trial
 
 
 *
 Honorable Mitchell H. Cohen, United States District Judge for the District of New Jersey, sitting by designation