John Coleman PIGNATO, Plaintiff,

v.

COMMONWEALTH OF VIRGINIA DE-
PARTMENT OF ENVIRONMENTAL
QUALITY, and Peter W. Schmidt, in His
Capacity as Director of the Virginia De-
partment of Environmental Quality, De-
fendants.

Civil Action No. 3:95cv461.

United States District Court,
E.D. Virginia,
Richmond Division.

Feb. 23, 1996.

James Broome Thorsen, Thorsen, Marchant & Scher, Richmond, VA, for plaintiff.

Guy Winston Horsley, Jr., Office of Attorney General, Richmond, VA, for defendants.

## MEMORANDUM OPINION

PAYNE, District Judge.

John C. Pignato, a former employee of the Department of Environmental Quality ("DEQ") of the Commonwealth of Virginia, instituted this action seeking relief under 42 U.S.C. § 1983 for alleged violations of the First Amendment and the Due Process Clause of the Fourteenth Amendment. Pignato also asserted a breach of contract claim under state law.

The Commonwealth and Peter W. Schmidt, the Director of the DEQ, have moved for summary judgment on the grounds that: (1) Pignato's claims are barred by res judicata and collateral estoppel; (2) Pignato has failed to demonstrate an issue of material fact as to whether his First Amendment rights were violated; and (3) Schmidt is protected by the doctrine of qualified immunity.

## STATEMENT OF FACTS

Pignato began employment with the Commonwealth on July 1, 1971. Twice thereafter, Pignato left state employment, but he was re-employed on October 1, 1984 as a Grade 17 employee in the position of Director of Administration for the State Water Control Board. When Pignato accepted that position, Grade 17 employees were permitted access to the state's grievance procedure under the Virginia Personnel Act ("VPA"), Va. Code Ann. § 2.1–110 et seq.

The purpose of the VPA is "to ensure for the Commonwealth a system of personnel administration based on merit principles and objective methods of appointment, promotion, transfer, layoff, removal, discipline, and other incidents of state employment." Va.Code § 2.1–110. As one of several means to that end, the VPA establishes a grievance procedure which affords covered employees, to the extent that their concerns cannot be resolved informally, "an immediate and fair method for the resolution of employment disputes which may arise between state agencies and those employees." Va.Code Ann. § 2.1–114.5:1 (Michie 1987), recodified at § 2.1–116.05 (1995). Where the grievance procedure is available, it may be used to challenge formal disciplinary actions, applications of written policies and procedures, arbitrary or capricious performance evaluations, acts of retaliation, and discrimination on the basis of race, sex, political affiliation, age, disability, color, national origin or religion. Va.Code Ann. § 2.1–114.5:1(A) (1987), recodified at § 2.1–116.06 (1995). Employees who have access to the grievance procedure are referred to as "classified" employees. Those who do not have access to the grievance procedure are referred to as "exempt" employees.

On July 1, 1985, eight months after Pignato was hired as Director of Administration for the State Water Control Board and almost 10 years before the termination of Pignato's employment, a change in state law reclassified certain persons holding positions of Grade 16 and higher so that they no longer were covered by the state's grievance procedure. Va.Code Ann. § 2.1–116(A)(16) (1985) (amended 1995). Those employees were commonly referred to as "643" employees, a term which derives from the Senate designation of the legislation as Bill 643, which was enacted as Section 2.1–116(A)(16) (1985) of the Virginia Code.

Under that version of the statute, which was in effect when Pignato's employment was ended, executive officers and employees who reported directly to the agency head and those at the level immediately below those who reported directly to the agency head and were at a salary grade of 16 or higher did not enjoy access to the grievance procedures.[1] Thus, in practical effect, their employment was terminable at will. Nonetheless, this statute does not strip 643 employees of all protections in respect of the termination of employment because, under the VPA, such

---

1. In 1994, this provision was modified to exclude the exception for employees immediately below the level of those who report directly to the agency head and who are level 16 or higher. See Va.Code Ann. § 2.1–116(16) (Supp.1994). The provision was amended again in 1995. Neither amendment is at issue in this action.

"personnel actions shall be taken without regard to race, sex, color, national origin, religion, age, handicap, or *political affiliation*." § 2.1–116(16) (1985) (repealed 1995) (emphasis added).

■ The 1985 amendment did not affect Pignato's rights in the position for which he was hired in 1984 because, under *City of Norfolk v. Kohler*, 234 Va. 341, 362 S.E.2d 894 (1987), his rights in that position were vested before the 1985 amendment. Accordingly, until 1993, Pignato remained entitled to the grievance procedure, notwithstanding that he otherwise met the description of a 643 employee under the 1985 amendment.

On April 1, 1993, the State Water Control Board was merged into the DEQ, effective as of July 1, 1993. Pignato's pay grade remained at level 17.[2] In June 1994, Schmidt was appointed as the Director of DEQ. Upon appointment, Schmidt was instructed to assess the organizational structure of the DEQ and to determine whether there was any way to eliminate jobs in furtherance of the Governor's plan to reduce the size of state government. Five management positions, including Pignato's, were abolished as part of the ensuing effort to comply with those instructions. As a result, Pignato's employment was terminated on June 10, 1994.[3]

### PROCEDURAL BACKGROUND

On June 29, 1994, Pignato, acting *pro se,* filed an action in the Circuit Court of Chesterfield County (the "Chesterfield Court") seeking: (1) an order that would allow him to use the VPA grievance procedure to challenge the termination of his employment; and (2) an injunction against termination of employment on the grounds that the termination violated 42 U.S.C. §§ 1983 and 1985, the Fourteenth Amendment, and the "Bill of Rights." (Plaintiff's Exhibit 4, Attachment 6.) On August 30, 1994, the Chesterfield Court determined that Pignato had failed to exhaust his administrative remedies and issued an order dismissing the action for lack of subject matter jurisdiction. On December 12, 1994, that litigation ended when the Supreme Court of Virginia held that no petition for appeal had been filed within the time allowed for appeal and ordered that the record be returned to the Chesterfield Court.

On July 12, 1994, six weeks before the Chesterfield Court dismissed Pignato's first action, Pignato filed a complaint with Schmidt seeking to challenge the termination under the VPA's grievance procedure. The grounds asserted in the grievance were that: (1) Pignato had accrued rights through employment by the Commonwealth which preceded the 1985 amendment adopting the so-called "643" provision of the Virginia code (which otherwise would have removed Pignato from the class of employees entitled to access the grievance procedure); and (2) Virginia law bars retroactive effect of later legislation. (Plaintiff's Exhibit 2.)

The administrative decision on the grievance concluded that, in connection with the April 1993 reorganization, Pignato was transferred to a DEQ position (Special Assistant for Program Development) which was listed as "exempt" under the VPA before Pignato accepted the reassignment.[4] The adminis-

---

2. In supplemental briefing, Pignato argues that his job title also remained the same, and that the Commonwealth never engaged in the internal procedural steps required by an Executive Order to designate him as a "643 employee" following the consolidation. However, even if these facts were significant, they are irrelevant to the Court's disposition of this case because the issue of Pignato's employment classification was decided adversely to Pignato by the Circuit Court of the City of Richmond when it held that Pignato was a "643 employee" by virtue of the consolidation of agencies which took place in 1993. See pp. 535–536 and 538–539 *infra.*

3. Schmidt avers that he informed Pignato that his job had been eliminated and that his employ-

ment was terminated immediately. Although Pignato says that Schmidt did not tell him that the position had been abolished, the record clearly reflects that the position was abolished in the reorganization.

4. The position was placed on The Excluded List Report, the official state designation of positions which are exempt under the VPA, on March 23, 1993. In his last supplemental brief, Pignato asserts that the state acted improperly in placing his name and position on that list. This argument is both belated and unavailing. The Richmond Court decision precludes its assertion here. See pp. 538–540, *infra.*

trator also determined that, under the VPA, grievance rights are not portable and that, therefore, notwithstanding that before the DEQ reorganization Pignato may have had vested grievance rights, he lost them upon transfer to the exempt position in 1993. For those reasons, the administrator determined that Pignato had no grievance rights. (Stipulated Record of State Court Proceedings, Tab 1, Letter of September 16, 1994.)

On September 28, 1994, Pignato appealed that decision to the Circuit Court of the City of Richmond (the "Richmond Court") which reviewed the action *de novo* under Va.Code Ann. § 2.1–114.5:1(E), recodified at § 2.1–116.07 (1995). On November 4, 1994, the Richmond Court affirmed the administrative decision that, under Va.Code Ann. § 2.1–116(16), Pignato did not have access to the grievance procedure. In so doing, the Richmond Court rejected Pignato's argument that, under the authority of *City of Norfolk v. Kohler*, 234 Va. 341, 362 S.E.2d 894 (1987),[5] he had vested rights in the grievance procedure which survived the 1993 merger of agencies.

Relying upon *Grove v. Powell–Woodson*, No. HA–1199–3 (Va.Cir.Ct. May 7, 1991), the Richmond Court held that, where an employee of the state government is transferred involuntarily to a position which terminates his right to a grievance procedure, he loses any vested right he may have to that procedure unless the transfer was accomplished by the agency as a ruse to eliminate the employee's vested rights.[6] Finding that Pignato's transfer as part of the 1993 consolidation of agencies was no such ruse, the Richmond Court stated:

[f]rom the administrative record and the evidence presented in this case, the court

finds that the consolidation of agencies which occurred in April, 1993, as well as plaintiff's change in jobs which occurred as a result of that consolidation, were not devices used by the state to deprive plaintiff of his grievance rights. Instead, they were legislative exercises of governmental discretion which were undertaken for purposes unrelated to plaintiff's employment rights.

(Stipulated Record of State Court Proceedings, Tab 9, p. 5.) In accordance with those findings, the Richmond Court denied Pignato's request for a panel hearing before the grievance committee because, as of 1993, Pignato's position with the DEQ was excluded from the class of employees entitled to the grievance procedure. Subsequently, Pignato filed a Motion to Reconsider, but, following a hearing, the Richmond Court entered an order on December 8, 1994 denying it. Pignato then instituted this action as to which the defendants now seek summary judgment.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is to be rendered "if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The rules further provide:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth

---

5. Va.Code Ann. § 1–16 provides, in pertinent part:

No new law shall be construed to repeal a former law, as to ... any right accrued, or claim arising under the former law, or in any way whatever to effect ... any right accrued, or claim arising before the new law takes effect....

In *Kohler*, the Supreme Court of Virginia held that state employees hold substantive rights in the grievance procedure which cannot be altered through retroactive application of legislation by virtue of Va.Code Ann. § 1–16.

6. *Grove* limited the breadth of the *Kohler* holding:

Nothing in the *Kohler* case or any other principle of law would dictate that an employee's former grievance rights follows throughout the entire career. Such rights are position-specific, not person-specific, just as is job description, salary and all other incidents of employment.

specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e).

It is the responsibility of the party seeking summary judgment to inform the court of the basis for its motion, and to identify the parts of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.,* 828 F.2d 211, 216 (4th Cir.1987). "[W]here the non-moving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories and admissions on file.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. The moving party may also use affidavits to support its motion. Then the non-moving party must go beyond the pleadings and, by citing its own affidavits or by citing " 'depositions, answers to interrogatories, and admissions on file,' [designating] 'specific facts showing that there is a genuine issue for trial.'" *Id.* Opposition to a properly documented summary judgment motion may not be based solely on the pleadings. *Id.*

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (emphasis added). It is the function of the district court not to weigh the evidence, but to determine whether there is a genuine issue for trial, and "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. at 2511 (citations omitted). Hence, summary judgment is appropriate if the evidence is "merely colorable" or "not significantly probative." *Id.* at pp. 249–50, 106 S.Ct. at 2511 (citations omitted). The standard for summary judgment mirrors the standard for directed verdict (now judgment as a matter of law) under Rule 50(a), Fed. R.Civ.P., the principal difference being procedural. *Id.* at 251, 106 S.Ct. at 2511–12. And, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986) (citations omitted). The non-moving party, however, "need only present evidence from which a jury might return a verdict in his favor. If he does so, there is a genuine issue of fact that requires a trial." *Anderson,* 477 U.S. at 257, 106 S.Ct. at 2514. The district court also "must view the evidence presented through the prism of the substantive evidentiary burden." *Id.* at 254, 106 S.Ct. at 2513.

Furthermore, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. at 2513. Summary judgment is appropriate only if, upon consideration of the record as a whole, a reasonable trier of fact could not find for the non-movant. *Allstate Fin. Corp. v. Financorp, Inc.,* 934 F.2d 55, 58 (4th Cir.1991). But, where a faithful examination of the record establishes the absence of a genuine issue of material fact, it is "the affirmative obligation of the trial judge to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987); *see also Guinness PLC v. Ward,* 955 F.2d 875, 883 (4th Cir.1992). With these principles in mind, the Court now considers the motion for summary judgment filed by the defendants.

## DISCUSSION

The Commonwealth and Schmidt argue that they are entitled to summary judgment because Pignato's claims are barred by res judicata and collateral estoppel in that the final judgment rendered by the Chesterfield Court bars any claims which were, or could have been, brought in that action. The defendants also seek the preclusive benefit of the judgment of the Richmond Court, although they are not clear as to whether they

think principles of res judicata or collateral estoppel apply.

As explained below, res judicata does not apply here, but summary judgment is appropriate on all but one of Pignato's claims because the central issues on which they turn are precluded by the principle of collateral estoppel. The non-precluded claim under the First Amendment is subject to summary judgment under the familiar principles which control application of Fed.R.Civ.P. 56. Because the defendants' motion is resolved on those two grounds, there is no need to consider the assertion of qualified immunity.

## I. PRECLUSION: RES JUDICATA AND COLLATERAL ESTOPPEL

Pursuant to the Full Faith & Credit Clause and its enabling statute, 28 U.S.C. § 1738, a federal court is obligated to accord a state judgment the same preclusive effect to which it would be entitled under the law of the state in which the judgment was rendered. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81–82, 104 S.Ct. 892, 896–97, 79 L.Ed.2d 56 (1984). Consequently, it is Virginia's law of claim and issue preclusion which controls the effect to be given by this Court to the judgments of the Chesterfield Court and the Richmond Court.

### A. Res Judicata

■ The doctrine of res judicata, or claim preclusion, bars a second attempt to litigate a claim which has been decided, or which could have been asserted, in previous litigation between the parties to an action. Under Virginia law, res judicata applies if there is: "(1) identity of the remedies sought; (2) identity of the cause of action; (3) identity of the parties; and (4) identity of the quality of persons for or against whom the claim is made." *Department of Social Serv. v. Johnson*, 7 Va.App. 614, 376 S.E.2d 787, 789 (1989) (citing *Wright v. Castles*, 232 Va. 218, 349 S.E.2d 125, 128 (1986)). Furthermore, the party must also establish that a final judgment on the merits has been reached by a court of competent jurisdiction. *Id.*

■ Application of these controlling principles demonstrate that the judgment of the Chesterfield Court has no preclusive effect because, under Virginia law, subsequent actions are not barred by res judicata if the court in the first action did not have subject matter jurisdiction over the proceedings. *Lloyd v. American Motor Inns, Inc.*, 231 Va. 269, 343 S.E.2d 68 (1986); *see Traverso v. Penn*, 874 F.2d 209 (4th Cir.1989) (holding that because venue was not properly laid in the initial proceeding, the action was stripped of all preclusive effect). Under Va.Code § 2.1–114.5:1(E) (Supp.1994), recodified at § 2.1–116.06(E) (1995), exhaustion of administrative remedies is a jurisdictional prerequisite to judicial review of decisions under the VPA. The Chesterfield Court dismissed Pignato's first action without reaching the merits because Pignato had not exhausted his administrative remedies. That decision, therefore, is entitled to no preclusive effect in this action.

■ Nor does the judgment by the Richmond Court operate as res judicata of any claim here asserted by Pignato. That court's jurisdiction was limited to a review of the issues decided by the agency head. Hence, the Richmond Court did not, and could not have, reached Pignato's due process, First Amendment or breach of contract claims. *See* Va.Code Ann. § 2.1–114.5:1(E) (Supp. 1994), recodified at § 2.1–116.06(E) (1995) ("The court may affirm the decisions of the agency head or may reverse or modify that decision.").

### B. Collateral Estoppel

■ However, the issues decided in the Richmond Court are preclusive in subsequent proceedings under the principle of collateral estoppel. Collateral estoppel, or issue preclusion, as applied in Virginia, prevents a party from relitigating issues that have been actually decided in, and which were necessary to, a prior judgment. *See, e.g., Reid v. Ayscue*, 246 Va. 454, 436 S.E.2d 439 (1993). The test for application of collateral estoppel under Virginia law is that: "(1) the parties to the prior and subsequent proceedings, or their privies, must be the same; (2) the factual issue sought to be litigated actually must have been litigated in the prior action; (3) the factual issue must have been essential

to the judgment in the prior proceeding, and (4) the prior action must have resulted in a judgment that is valid, final, and against the party against whom the doctrine is sought to be applied." *Angstadt v. Atlantic Mut. Ins. Co.,* 249 Va. 444, 457 S.E.2d 86, 87 (1995).

The judgment entered by the Richmond Court was final. *See* Va.Code § 2.1–114.5:1(E), recodified at § 2.1–116.06(E) ("The decision of the court is final and is not appealable"). The same parties who are before this court fully litigated in the Richmond Court the issue of whether Pignato was entitled to access to the grievance procedure. *See Stipulated Record of State Court Proceedings in the Circuit Court City of Richmond* at Tab 8.[7] And, that issue was essential to the judgment entered by the Richmond Court. Because the elements of collateral estoppel are met, the remaining question is whether the breach of contract and due process claims presented here were disposed of by the Richmond Court.

■ Pignato's breach of contract claim here alleges that: "Defendants breached their contract with ... Plaintiff by denying his property interest and continued public employment and his rights *under the State's Grievance Procedure,* all of which were vested in him ..." and "Defendants *breached ... Plaintiff's contract rights* in all other attendant rights and benefits *in the State's Person-nel Act and Grievance Procedure* including access to the State's layoff policy." Complaint at 7 (emphasis added). Clearly, the breach of contract claim asserted here depends on whether Pignato was entitled to access the state's grievance procedure, an issue which the Richmond Court decided adversely to Pignato. Accordingly, the defendants are entitled to summary judgment on the breach of contract claim because, under Virginia law, that judgment precludes litigation of the central issue on which the breach of contract claim depends.

■ Pignato's due process claim in this action is that his termination "without the benefit of any ... pre- and/or post-termination hearing ... amounted to a *deprivation of [his] property interest* in continued public employment without due process." The determination by the Richmond Court that Pignato had no vested right in access to the grievance procedure estops Pignato from claiming here that the defendants violated his procedural due process rights by rejecting his request for a termination hearing under the grievance procedure. Because the Richmond Court determined that Pignato was not entitled to access the grievance procedure, the failure to provide a hearing under that procedure is not a denial of due process.[8]

7. Pignato asserts that the Richmond Court did not allow discovery or testimony on his claim that he was not covered by the 643 exemption. This, says Pignato, means that he did not have a "full and fair" opportunity to try his case. (Plaintiff's Response To Defendants' Motion For Summary Judgment, pp. 8–9.) The Supreme Court of the United States has held that "[r]edetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation." *Montana v. United States,* 440 U.S. 147, 163 n. 11, 99 S.Ct. 970, 979 n. 11, 59 L.Ed.2d 210 (1979). However, the "deficiencies" proffered by Pignato were not the result of inherent limitations in the Richmond Court rules of procedure, rather, they were the result of the Richmond Court's ruling as to the relevance of facts to the disposition of the issue before the court. To find that Pignato did not have a full and fair opportunity to litigate this issue because the Richmond Court determined that certain evidence was not relevant to what it perceived to be a purely legal issue would be inconsistent with the very rationale upon which the doctrine of collateral estoppel rests. Consequently, there is nothing which suggests that the Richmond Court litigation did not provide Pignato a full and fair opportunity to present his claim.

8. Pignato's due process claim would fail even if the Richmond Court had not decided the issue of his employment status adversely to him. "[A] state employee has no property interest in receiving the precise procedure provided by state law." *Mandel v. Allen,* 889 F.Supp. 857, 867 (E.D.Va. 1995). "Thus, if a state grievance law grants more procedural rights than the constitution requires, failure to comply with state law does not create a federal due process violation." *Garraghty v. Dept. of Corrections,* 52 F.3d 1274, 1285 (4th Cir.1995). The Supreme Court has explained:

> Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement.... The State may choose to require procedures for reasons other than protection against deprivation of substantive

Insofar as the Complaint asserts a claim for a deprivation of Pignato's property right to a termination hearing under *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), that too is precluded by the Richmond Court's decision. "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Id.* at 542, 105 S.Ct. at 1493 (citations omitted). A property interest arises when state law creates a "legitimate claim of entitlement" to certain benefits of employment. *Mandel v. Allen,* 889 F.Supp. 857 (E.D.Va.1995). Applying that principle, *Loudermill* and its progeny have held that it is "[t]he *tenured* public employee is entitled to oral or written notice of the charges against him." *Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1495 (emphasis added). Moreover, decisions in this circuit have consistently held that where an employee holds "at will" employment, there is no legitimate expectation in continued state employment and, hence, no constitutionally protected property interest. *E.g., Jenkins v. Weatherholtz,* 909 F.2d 105, 107 (4th Cir.1990); *James v. Powell,* 765 F.Supp. 314 (E.D.Va. 1991); *see also Farthing v. City of Shawnee,* 39 F.3d 1131 (10th Cir.1994) (holding that, under Kansas law that a public employee who is terminable at will does not possess a protected property interest for purposes of procedural due process analysis).

Here, the Richmond Court determined that, after his transfer in 1993, Pignato was a "643" employee and, thus, was not entitled to access the grievance procedure. Consequently, Pignato's employment status is defined by common law principles as developed under Virginia law. Because he is not protected by the statutory common law doctrine of employment at will, *Bowman v. State Bank of Keysville,* 229 Va. 534, 331 S.E.2d 797, 798 (1985), Pignato cannot be said to have had a legitimate expectation in continued state employment. Without such a prop-

erty interest, Pignato does not have a cognizable due process claim under *Loudermill.*

The judgment of the Richmond Court, therefore, disposed of the due process issue here. Accordingly, summary judgment is appropriate on Pignato's due process claim.

## II. THE FIRST AMENDMENT CLAIM

Pignato argues that the, "actions of the Defendants in terminating [the] Plaintiff were a violation of his First Amendment Rights." Complaint at 7. The gravamen of this claim is that, because Pignato did not affirmatively affiliate himself with the Republican party and the current Republican administration, his position was eliminated. Because neither the Chesterfield Court nor the Richmond Court had jurisdiction over Pignato's Section 1983 claim and because neither decided whether Pignato's position was eliminated as a ruse to terminate him on the basis of his political beliefs, neither collateral estoppel or res judicata now bars this claim. However, the defendants argue that they are, nevertheless, entitled to summary judgment because Pignato has not alleged any facts which support his claim.

The starting point for an analysis of the issue is, of course, the legal doctrine which forms the basis of the plaintiff's claim. It is clearly established that, with but a few narrow exceptions, the conditioning of public employment upon the holding of private political beliefs violates the First Amendment of the Constitution. *Rutan v. Republican Party of Ill.,* 497 U.S. 62, 75–76, 110 S.Ct. 2729, 2737–38, 111 L.Ed.2d 52 (1990); *Akers v. Caperton,* 998 F.2d 220, 224 (4th Cir.1993).

In *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), the Supreme Court held that patronage dismissals of non-policymaking officials on the basis of their political affiliation or non-affiliation violates the First Amendment. The Court recognized that "[p]atronage ... to the extent it compels or restrains belief and association is inimical to the process which undergirds our

rights, of course, but in making that chose the State does not create an independent substantive right.

*Olim v. Wakinekona,* 461 U.S. 238, 250–51, 103 S.Ct. 1741, 1748, 75 L.Ed.2d 813 (1983). Thus,

Pignato has no constitutional right to receive the precise grievance procedure provided by state law.

system of government and is 'at war with the deeper traditions of democracy embodied in the First Amendment.'" *Id.* at 357, 96 S.Ct. at 2682 (citations omitted). However, the Court carved out a narrow exception to this general prohibition acknowledging that, for a limited class of government employees, patronage employment serves the compelling government interest in effective and efficient government service. *Id.* at 367–68, 96 S.Ct. at 2681–82; *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). In this case, the Court has no occasion to consider the applicability of that exception, commonly referred to as the "policymaker exception," because the defendants have not disputed, for the purposes of this motion, that Pignato was not a policymaker.

■■■■ In accordance with the principles of summary judgment articulated earlier in this opinion, the defendants must identify the parts of the record which they believe demonstrate the absence of a genuine issue of material fact and produce evidence showing that they made the decision to terminate Pignato without regard to his alleged lack of affiliation with the Republican party. If the defendants produce such evidence, the burden shifts to Pignato, and he must come forth with some factual or evidentiary foundation for his claim of a violation of his associational rights, because "[m]ere speculation is not enough to meet this burden." *Munson v. Milwaukee Bd. of Sch. Directors*, 969 F.2d 266, 270 (7th Cir.1992). Pignato must adduce enough evidence for a jury to find that his lack of associational activity was a motivating or substantial factor in some action adverse to his employment. *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). This amounts to a "but-for" test for causation. *Jones v. Dodson*, 727 F.2d 1329 (4th Cir.1984). If "the evidence raises genuine issues as to the actual reason for an employee's discharge, that motivational issue must of course be resolved by the trier of fact." *Id.* at 1337.

The defendants have offered Schmidt's affidavit to demonstrate that he has never been aware of Pignato's political affiliation and that his sole motive for abolition of Pignato's

position was the administration's plan to downsize state government. Schmidt's affidavit states that, as Director of the DEQ, he "was instructed by [his] supervisors to review the organizational structure of the DEQ, assess whether it needed to be reorganized and determine whether there was any way to eliminate jobs, in conformance with Governor Allen's pledge to reduce the size of government" and that as a result of this review, Pignato's job was eliminated. Affidavit of Peter W. Schmidt at ¶¶ 2–4. Schmidt also avers that "[t]he elimination of [Pignato's] position was not based on his political affiliation" and that Schmidt had no knowledge of Pignato's affiliation at any time. These sworn statements constitute a prima facie case that Pignato's job was eliminated for bona fide non-discriminatory reasons and that his employment was not terminated because of his political affiliation. Thereupon, under the now familiar calculus for summary judgment, the burden of production has shifted to Pignato.

Pignato's affidavit asserts that the Allen Administration replaced the former director of DEQ with Schmidt, a Republican, and that, in May 1994, Schmidt made a temporary assignment of three new employees to the DEQ, all three of whom were, and/or are, affiliated with the Republican party; and that each of these three new employees took over some duties in the DEQ which were of the type sometimes performed by Pignato. Pignato Affidavit at ¶ 19. Pignato also avers that he "was not a known supporter of George Allen" and that he "lacked the support of any Republican party official and likewise lacked any Republican credentials and was not affiliated with the Republican party of Virginia." Pignato Affidavit at ¶ 20.

These assertions are insufficient to establish a factual issue as to whether Pignato's employment was terminated because of his lack of political affiliation. For example, in *Laskaris v. Thornburgh*, 733 F.2d 260 (3rd Cir.), *cert. denied*, 469 U.S. 886, 105 S.Ct. 260, 83 L.Ed.2d 196 (1984), the plaintiffs brought an action against various officials within the Pennsylvania Department of Transportation alleging that they were discharged because they were affiliated with the Democratic party. The Third Circuit af-

firmed the district court's decision to grant summary judgment in favor of the defendants because the plaintiffs offered insufficient evidence to show that the defendants had the predicate knowledge of the plaintiffs' political affiliation before they terminated them. The court held that, even where "the evidence has ... a vague aura of politically motivated patronage firings," such allegations are not sufficient to carry the day if there is no evidence that the defendants knew of the plaintiffs affiliation or that the defendants had any influence on the discharge decision. *See id.* at 266; *see also Savage v. Gorski,* 850 F.2d 64, 68 (2d Cir. 1988) (finding that it was unlikely that the plaintiffs would succeed on the merits of their political discharge claim because they failed to offer any evidence that the defendants were aware of their political affiliation).

Here, as in *Laskaris,* the record does not present a factual issue respecting Schmidt's knowledge of Pignato's political affiliation. Where, as here, the record contains an affirmative showing that the decision-maker did not even know Pignato's political affiliation, allegations of the sort made by Pignato cannot carry the day.

This fatal defect is not cured by Pignato's assertions that the other Republican employees were hired into positions which encompassed some of the same duties which Pignato had performed. This, according to Pignato, alone creates a genuine dispute respecting whether his termination was a ruse to hide the allegedly political motivation for his termination. However, Pignato has not produced any evidence which contradicts the defendants' showing that the decision by DEQ to hire three new employees into positions with similar duties is consistent with the defendants' motivation to "downsize" government. In that regard, defendants point out that Pignato's own affidavit shows neither that the employees were hired to replace Pignato nor that they were permanently performing duties he had performed.

Moreover, the record contains a letter from the Secretary of Natural Resources which announces the hiring of these employees and then states that their "placements are to conclude upon completion of the respective assignments." This indicates that the positions of the other employees were substantially different from Pignato's in that they were subject to transfer or termination upon completion of their duties which, of course, is consistent with the defendants' allegations that they were engaged in creating more efficient, smaller government.

Finally, the defendants point out that those three positions were created and filled before Schmidt made the decision to eliminate Pignato's position and, indeed, before Schmidt was even appointed.[9] That fact makes impermissible the claimed inference that the hiring of those three new Republican employees evinced Schmidt's intent to discriminate against those who were not Republican.

Although the court is mindful that the determination of whether a retaliatory purpose was a motivating factor behind an employment decision is a question that "demands a sensitive inquiry into such circumstantial and direct evidence of intent that might be available," *Harris v. Wood,* 888 F.Supp. 747 (W.D.Va.1995), the court finds that Pignato's evidence on that issue is simply too insubstantial and speculative to generate an issue of material fact because, as previously discussed, he has presented no evidence that the defendants knew of his lack of a political affiliation. Therefore, the defendants are entitled to summary judgment on the First Amendment claim.[10]

## CONCLUSION

For the foregoing reasons, the motion for summary judgment is granted. Hence, this action will be dismissed with prejudice.

It is so ORDERED.

---

**9.** Schmidt was not appointed until June 3, 1994, whereas the three employees begun on May 23 and May 26 of 1994.

**10.** Because Pignato's First Amendment and due process claims have been disposed of as reflected herein, the court does not need to reach the qualified immunity issue raised by the defendants.